**DOAN v. UNITED STATES.**

No. 13458.

United States Court of Appeals
Ninth Circuit.

Feb. 27, 1953.

Rehearing Denied March 30, 1953.

4.   Universal Camera Corp. v. Labor Bd., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

Kenny & Morris, Los Angeles, Cal., for appellant.

Walter S. Binns, U. S. Atty., Ray H. Kinnison and Richard F. C. Hayden, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before HEALY, BONE and POPE, Circuit Judges.

POPE, Circuit Judge.

Doan appeals from a judgment upon a verdict finding him guilty of perjury, subornation of perjury and obstruction of justice. In January, 1950, in the Southern District of California, the Grand Jury returned an indictment against the appellant and fifteen other defendants charging a conspiracy to violate the narcotics laws of the United States. On Monday, February 27, 1950, Doan appeared in the court at Los Angeles and was arraigned on this indictment. The trial was then set for April 25, 1950. One of the defendants in the indictment, Abraham Davidian, was to be the principal government witness at the trial. On the day following Doan's arraignment, at some time between the hours of 11 A.M. and 2 P.M., Davidian was shot through the head by some assailant while he was lying on a couch in his home at Fresno, California.

Doan had driven to Los Angeles in his automobile the evening before he was arraigned. He was accompanied by one Arthur Miller. On the morning of February 28, which was the day following the arraignment and the day on which Davidian was shot, Doan and Miller drove north through Bakersfield, Fresno, Merced and on to Oakland. At Fresno they stopped to eat at the California Hotel. Miller went to the offices of a vineyard company in the hotel building where he engaged in a conversation at some time between 11 and 12 o'clock. Doan was not then present. Miller put the departure of Doan and himself from Fresno at 11:25 A.M. The vineyard company representative who talked with Miller indicated that their visit may have terminated just prior to the noon hour. If the hour at which they reached Merced after driving the 56 miles from Fresno could be ascertained, it would furnish an important clue

as to the probable time of their departure from Fresno.

Because the Government was unable to proceed under its indictment without Davidian's testimony, Doan and his codefendant were never brought to trial on that indictment, but in June, 1950, the Grand Jury in the District Court of the Southern District of California, undertook an inquiry and investigation of matters relating to an obstruction of justice arising out of the murder of Davidian. As a part of these investigations, the Grand Jury subpoenaed Doan and he was questioned under oath. He testified that after leaving Fresno on the occasion mentioned, he arrived at Merced at approximately 12:30 to 12:45 P.M. on February 28, 1950, and that he and Miller left Merced in the automobile at 1:15 P.M. Doan said that while in Merced he called on one Georgia Martin at her apartment. He also testified that he had not at any time within two years prior to the date of his testimony before the Grand Jury, possessed any hand weapons, revolvers or automatics; that he had prior to 1941 or 1942 owned a revolver when he operated a cafe in Merced but had not had it since that date. As it appeared that Davidian had been shot with a 7.65 mm. bullet from an automatic pistol, he was asked if he had owned a weapon of that description and testified that a soldier returning from Germany during the Second World War had given him such an automatic which he himself had given to one Gordon Melcher in 1945.

Count I of the indictment was predicated upon Doan's testimony as to the time of his arrival at and departure from Merced, the indictment charging perjury[1] in that his testimony in this regard was corruptly and intentionally false in that his arrival and departure were in truth and in fact an hour later than the time he gave in his testimony.

Count II charged perjury in respect to his testimony as to the giving of the automatic pistol to Gordon Melcher.

Count III charged perjury in his testimony that he had not owned or possessed any hand weapons for two years prior to the Grand Jury investigation, it being alleged in that count that he had owned and possessed two such weapons less than 30 days prior to the date when Davidian was shot.

In connection with this investigation the Grand Jury also subpoenaed Georgia Martin, the person whom Doan had visited during his stay in Merced at the time previously mentioned. Georgia Martin testified (1) that Doan visited her at her apartment between 12:30 and 1 P.M. on the day in question; and (2) that she knew that Doan had left her apartment by 1 o'clock for the reason that she had an appointment at a local beauty parlor for 1 o'clock on that day (February 28), and that she kept it.

Count IV of the indictment charges that this testimony of Georgia Martin was false and perjured and that Doan was guilty of subornation of such perjury[2] in that he corruptly and feloniously induced and procured Georgia Martin to give such false testimony to the effect that he had left her apartment for his trip to Oakland before 1 P.M. whereas the true time he left her apartment was approximately 2 P.M. and so known to the defendant.

This count further charged that defendant directed that Georgia Martin should testify that the reason she knew that Doan

1. Title 18, § 1621, U.S.Code: "Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury, and shall, except as otherwise expressly provided by law, be fined not more than.$2,000 or imprisoned not more than five years, or both."

2. Title 18, § 1622, U.S.Code: "Whoever procures another to commit any perjury is guilty of subornation of perjury, and shall be fined not more than $2,000 or imprisoned not more than five years, or both."

left her apartment before 1 P.M. was that she had the beauty parlor appointment on that day and that she kept that appointment, whereas in truth and in fact she had no such appointment but her beauty shop appointment was on a previous day as was well known to the defendant.

Count V of the indictment charged Doan with corruptly obstructing justice [3] in that he induced and attempted to induce Georgia Martin to give this false testimony.

Count II of the indictment was dismissed during the trial. Doan was found guilty under counts I, III, IV and V, and sentenced to serve a term of four years on each count, said periods to run concurrently.

Georgia Martin was the Government's principal witness. She testified with great particularity and circumstantiality as to Doan's arrival at her apartment on February 28, 1950, not at the hour of 12:30, as Doan and she had testified before the Grand Jury, but at the hour of 1:30 on that day, and she testified that he left her apartment on the same day at ten minutes before 2 P.M. She testified that on that day she had no appointment at the beauty parlor although she had had a 1 o'clock appointment which she kept on the preceding day, February 27; that some days later Doan returned to her apartment and made inquiries of her as to whether she had been interviewed by officers of the F. B. I. and with threats and considerable show of violence told her that if any inquiry was made of her she should state that he had arrived at 12:30 and left at 10 minutes to 1 o'clock. He discussed with her the question of whether she had had a beauty parlor appointment on that day. She told him she had not and he told her to get hold of the beauty parlor appointment book and change the records to show that she did, and to report to any person inquiring that she had had that appointment for 1 o'clock on February 28, that she

kept the appointment and hence she knew that Doan left her place before 1 o'clock. Her testimony was that she did cause the beauty parlor appointment book to be altered and falsified to show an appointment on February 28; and that later, after she had received her subpoena to testify before the Grand Jury Doan warned her to be sure to tell the Grand Jury the same false account of the hour of his arrival, and of her beauty shop appointment. She also testified to facts which would tend to show that Doan owned two hand weapons of the kind described in the third count within a period of two or three weeks before the date when Davidian was killed.

Appellant contends that the court should have granted his motions for judgment of acquittal on counts, I, III and IV, on the ground that there was not the requisite quantum of proof to support a conviction of perjury or subornation of perjury within the rule of Hammer v. United States, 271 U.S. 620, 46 S.Ct. 603, 70 L.Ed. 1118, and of Weiler v. United States, 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed 495, which bars a conviction of perjury on the uncorroborated testimony of a single witness.

With respect to count V, drawn under the obstruction of justice statute, (footnote 3, supra), while appellant concedes that the same rule as to the quantum of evidence was not required to support a conviction, yet he asserts that the judgment of conviction upon that count should be reversed and a new trial ordered because of prejudice which he asserts he suffered by reason of the failure of the court to grant his motion for an acquittal as to counts I, III and IV at the close of the Government's case. He says that that motion should have been granted at that stage of the proceedings, and that if it had been so granted, the appellant could and would have taken the stand in his own defense and would then

3. Title 18, § 1503, U.S.Code: "Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States or before any United States commissioner or other committing magistrate, or any grand or petit juror, or officer in or of any court of the United States * * * or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

have been able to deny the testimony of Georgia Martin. He says that as long as counts I, III, and IV remained in the case he could not safely take the stand lest under the rule of Vedin v. United States, 9 Cir., 257 F. 550, he might by testifying in his own behalf, supply the corroboration necessary to satisfy the rule relating to perjury cases. He contends that the court's failure to eliminate these perjury and subornation of perjury counts at the end of the Government's case put him in a delemma where he had either to run the risk of furnishing corroboration lacking on the three counts or to do without the benefit of his own testimony on the fifth count.

We find it unnecessary to consider this contention with respect to the fifth count for the reason that we are satisfied that the Government supplied the requisite quantum of proof under at least one of the other counts and hence appellant is not in a position to assert that he should have entered upon this portion of the case free from all charges other than those contained in count V.

■ In discussing the question of the sufficiency of the evidence to support the subornation of perjury charge in count IV, we bear in mind the rule laid down by this court in Catrino v. United States, 9 Cir., 176 F.2d 884, 888. There we stated that so far as the falsity of the oath was concerned, —the actual perjury,—it must be proven by the same quantum of proof required in perjury cases. We added: "In a subornation of perjury case, proof that the defendant *induced* the commission of the offense, is not subject to this requirement". This means that while it was incumbent upon the Government to prove that the testimony given by Georgia Martin before the Grand Jury was false, and to prove that it was thus false by two independent witnesses, or by one such witness plus corroborating circumstances, yet as to the element of subornation of the perjury, that is to say, as to whether the defendant induced the commission of the perjury on her part, "the proof is the same as in all other crimes,— proof beyond a reasonable doubt". As to the inducement, the testimony of Georgia Martin alone was sufficient so far as the rules here discussed are concerned.

We have noted that the Government undertook to prove that Georgia Martin when testifying before the Grand Jury, swore falsely in two particulars. In the first place, it is asserted she falsely testified that Doan reached her apartment on February 28, 1950 between 12:30 and 1 P.M. and departed before 1 P.M. In the second place, it is charged she swore falsely that she was able to fix the time of Doan's departure by the fact that on that day she had a 1 o'clock beauty parlor appointment which she kept.

With respect to this last portion of her testimony there is no difficulty whatever about the two witness rule. Georgia Martin testified that the facts were that although her beauty parlor appointment was actually for 1 o'clock on the day previous, February 27, and not on February 28, Doan induced her to have the record of that appointment altered and to tell the Government investigators and to swear that the appointment was at 1 P.M. on February 28.

Lea Toewes, the beauty shop operator, testified that about a month after February 27, 1950, Georgia Martin talked to her about the appointment book; that at that time the book showed that Georgia Martin had been in the beauty parlor on February 27 and not on February 28, and that the book then disclosed the true facts, which were that February 27 was the date of Georgia Martin's appointment. She testified that at the time of that conversation she, at Georgia Martin's request, erased the latter's name where it appeared on the book for February 27 and inserted it where there was a blank space opposite the hour of 1 o'clock on the 28th of February, and then adjusted the totals of receipts for the two days to correspond to the change in the record. The space where the insertion was made was blank because there had been no appointment at that hour on that date. It thus appears that both Georgia Martin and Lea Toewes testified to facts which disclosed that Georgia Martin's testimony before the Grand Jury on this point was false.

■■ The testimony was not only false but it was material. Appellant in challenging its materiality says: "The simplest answer to this latter contention is that the only thing *material* to the Grand Jury's investigation was *Doan's* whereabouts at midday on the 28th of February, *not* Georgia Martin's whereabouts on that day or on any previous day". This discloses that appellant has misapprehended the significance of this false testimony. To be material it is not necessary that a false statement should bear directly on the main issue. If the statement in question is corroboratively or circumstantially material, or has an ultimate tendency to prove or disprove any material fact in a chain of evidence, it is material even although in itself and standing alone it might be insufficient to establish the principal issue in the case.

Plainly the story about the beauty parlor appointment had an important bearing, not only to corroborate the other statement as to when Doan left Georgia Martin's apartment, but it tended to demonstrate the special occasion which she claimed to have for remembering the exact hour. Thus it increased the credibility of her other statement. In Luse v. United States, 9 Cir., 64 F.2d 776, this court pointed out that testimony respecting a transaction which occurred after an indictment had been returned and which therefore could have had no tendency to prove any issue made by the indictment, but which was important in judging the credibility of the witness, was material. The same rule has frequently been announced in other circuits. Goins v. United States, 4 Cir., 99 F.2d 147, 148; United States v. Slutzky, 3 Cir., 79 F.2d 504.[4]

■■ Since the first testimony with respect to the beauty parlor appointment was material, and since its falsity was proven by the requisite quantum of evidence, this was enough to sustain a conviction upon count

IV even if the Government wholly failed to establish that Georgia Martin's testimony was false in the other respect charged. In a case of this kind, if two perjurious statements are alleged, and but one proven, the proof is sufficient for conviction. Shallas v. United States, 9 Cir., 37 F.2d 692, 694 (quoting from Wharton's Criminal Evidence); Todorow v. United States, 9 Cir., 173 F.2d 439, 445; United States v. Goldstein, 2 Cir., 168 F.2d 666, 671.

What we have said sufficiently disposes of appellant's argument with respect to count IV. Georgia Martin's testimony before the Grand Jury that she had and kept the beauty parlor appointment on February 28, 1950, was material and it was proven false by the testimony of two witnesses as well as the corroborating physical evidence of alterations in the appointment book itself. The cases last cited disclose that this proof was sufficient to sustain a conviction without regard to the state of the evidence concerning the other part of Georgia Martin's testimony. But with respect to that other portion, namely, her testimony before the Grand Jury as to when Doan came to her apartment on that day, we observe that her evidence that her former testimony was false was corroborated by proof of other circumstances.

It appears from the testimony of Miller, Doan's companion, that Doan drove out of town promptly after his return from Georgia Martin's apartment. It will be recalled that Georgia Martin's testimony before the Grand Jury was that Doan was in her apartment between 12:30 and 1 P.M. The Government offered proof tending to show that Doan was still in Merced at least as late as 1:30 on that afternoon. The witness Fragie testified that he was cutting his front lawn in Merced on that day when Doan drove by and stopped and talked to him for about ten or fifteen minutes. Doan then drove on and Fragie went into his

**4.** In United States v. Weiler, 3 Cir., 143 F.2d 204, 206, in a portion of the opinion which was not affected by the Supreme Court's grant of certiorari, the court quoted with approval from an earlier case the following statement: " 'But when the superfluous or collateral matter is calculated and intended to prop and bolster the testimony of the witness on some material point, as by clothing it with circumstances which add to its probability or strengthen the credibility of the witness,' it is material."

house, took a shower, cleaned up and drove in his car to the Anglo California National Bank in Merced, a distance of about two miles. He testified that he estimated the time that elapsed between when Doan and Miller departed and his arrival at the bank as "probably a half hour". The witness was unable to name the hour when Doan left or when he arrived at the bank, as he had not looked at his watch. His purpose in going to the bank was to cash a draft for $132.20. The bank teller who cashed the draft for him was able to identify the draft from the record in his receiving machine tape and his final closing blotter. These disclose that the particular draft was cashed by this teller in the afternoon of that day. The teller returned from lunch at 2 o'clock and in the period from 2 o'clock until closing time on that day his record showed that he had cashed eight checks or drafts, all listed on the blotter, and that the draft for $132.20 was the third check from the top of this list. He was unable to state how long after 2 o'clock on that afternoon this transaction had occurred. If Fragie's opinion as to the time which elapsed was correct, it is apparent that Doan was still in Merced at least as late as 1:30 P.M.

▉ Appellant asserts that Fragie's testimony was so weakened on cross-examination that it must be wholly disregarded. On cross-examination the witness admitted that the period of time which he estimated to be a half hour could have been more or less, and testified: "Q. And it could have been considerably more than a half hour? A. It could have been." Fragie was qualified to estimate and to express an opinion as to the lapse of time and his testimony was proper and competent. See Wigmore on Evidence, 3d Ed., § 1977. It was for the jury who observed him and the manner and emphasis with which he gave his answers on direct and cross-examination to weigh and evaluate his testimony and to say whether the quoted statement (to the effect that the time could have been considerably more than half an hour) amounted, as appellant argues, to a withdrawal of his direct testimony, or whether it was simply the kind of statement which any honest witness might make,—that it was no more

than an admission that he *could* be mistaken in his estimate.

The rule relating to the corroboration which is required in a case of this kind, is stated by Mr. Wigmore as follows: "As to the nature of the corroboration, no detailed rule seems to have been laid down, nor ought to be laid down. The jury should be instructed not to convict unless the testimony of the principal witness has been so corroborated that they believe it to be true beyond a reasonable doubt". Wigmore, 3d Ed., § 2042. "The sufficiency of the corroboration is, of course, a question for the jury." United States v. Seavey, 3 Cir., 180 F.2d 837, 840. In speaking of the question of the trustworthiness of the corroborative testimony, the Supreme Court said in Weiler v. United States, supra [323 U.S. 606, 65 S.Ct. 550], "To resolve this latter question is to determine the credibility of the corroborative testimony, a function which belongs exclusively to the jury." See also Buckner v. United States, 81 U.S.App.D.C. 38, 154 F.2d 317, 318, and Adams v. United States, 9 Cir., 191 F.2d 206.

Since, as we have indicated, there was sufficient evidence to sustain a conviction under count IV of the indictment, the ground is cut from under appellant's contention that he should have a new trial upon the charge in count V because he was maneuvered out of an opportunity to take the stand in his own defense under that count.

▉▉ There is no doubt of the sufficiency of the Government's proof of the allegations of the fifth count. Appellant does not contend otherwise. We have found the evidence sufficient to sustain a conviction upon both counts IV and V, and since the sentences imposed upon the other counts run concurrently, it is unnecessary to inquire as to the sufficiency of the evidence under counts I and III. Cohen v. United States, 9 Cir., 1953, 201 F.2d 386; Abrams v. United States, 250 U.S. 616, 619, 40 S.Ct. 17, 63 L.Ed. 1173; Sinclair v. United States, 279 U.S. 263, 299, 49 S.Ct. 268, 73 L.Ed. 692.

▉ Appellant assigns a number of other errors. One arises out of the fact

that when Georgia Martin was testifying she first stated that Doan left her apartment at ten minutes to one and then was permitted on prompting by Government counsel to restate the time as ten minutes to two. In permitting this the court was doing no more than carrying out its primary function of seeing that the truth was developed. No prejudice could have resulted, and it was for the jury to judge whether what had occurred in their presence was anything other than a slip of the tongue. The whole record would indicate that the jury could not but have been thoroughly convinced that Georgia Martin's account of subornation and of her own perjury was true, not only by reason of the apparently convincing detail with which she testified, but because at the one point where the jury could test the truth of the matter with certainty the physical condition of the beauty shop appointment book demonstrated that her account of this incident was correct.

 Appellant charges Government counsel with misconduct in his argument to the jury. As he addressed the jury counsel recounted what he said were the thoughts which must have been going through the mind of Georgia Martin when she arranged to change the record in the beauty parlor. Appellant argues that this was improper for there was no such evidence as to what was in Georgia Martin's mind at that time. But after he had thus related these thoughts he said were in her mind, counsel concluded: "That is my language; not hers. But it follows from the statements on the stand." The suggestion of such inferences, and the assertion that they may be drawn from the testimony, is legitimate argument. Appellant's contention is without merit.

■ Finally, it is asserted that the court erroneously and prejudicially read to the jury an extract of testimony which had been stricken at the time it was given. During his address to the jury Government counsel was arguing that a Miss Antone, a very unwilling witness called by the Government, had testified that a certain gun had a name plate which referred to the defendant. Upon objection being made to this argument, the court in an effort to read

to the jury the portion of the witness' testimony referred to, read to them an answer of the witness as follows: "Well I think it related to Rusty because Georgia said it was his gun". This statement had been stricken because of its hearsay nature. But the court immediately admonished the jury to disregard it, and called their attention to the fact that it had been stricken from the record and was no part of it. We find nothing here of which the appellant may properly complain.

The judgment is affirmed.