A. Ray SEGAL, Appellant,

v.

UNITED STATES of America, Appellee.

No. 15726.

United States Court of Appeals
Eighth Circuit.

Aug. 6, 1957.

Rehearing Denied Sept. 13, 1957.

Linus J. Hammond and Richard B. Ryan, St. Paul, Minn., for appellant.

Clifford Janes, Assistant United States Atty., (George E. MacKinnon, United States Atty., and Kenneth G. Owens, Assistant United States Atty., were with him on the brief), for appellee.

Before GARDNER, Chief Judge, and VOGEL and VAN OOSTERHOUT, Circuit Judges.

GARDNER, Chief Judge.

Appellant has appealed from a judgment and sentence of conviction on an indictment of one count charging him with the offense of subornation of perjury. The indictment charged that appellant suborned one Mary K. Johnson to commit perjury as a witness in the trial of one Donald Nelson.

In that case Nelson was charged with transporting Mary K. Johnson in interstate commerce and with conspiring with one Robert Bannarn to accomplish such transportation in violation of the so-called Mann Act, 18 U.S.C.A. §§ 2421–2423. In the course of this opinion we shall refer to the appellant as defendant.

In the instant case defendant entered a plea of not guilty and on trial the jury returned a verdict of guilty. The verdict, however, on motion of defendant was set aside and a new trial granted. On the second trial defendant was again found guilty and his motions for judgment of acquittal and for a new trial were respectively overruled and judgment and sentence of conviction entered upon the verdict from which defendant prosecutes this appeal.

Defendant first challenges the sufficiency of the evidence to sustain the verdict.

■ While the indictment contained but one count and charged but one offense it contained nine separate paragraphs each dealing with a separate subject matter. The court submitted but four out of these nine subjects of perjury to the jury. If there was proof that the testimony referred to in any one of these paragraphs was false and proved to be suborned that would sustain the charge of subornation of perjury. The trial court so instructed the jury and we believe this statement of the applicable law is not controverted by defendant on this appeal.

Of the four subject matters constituting the allegedly perjured testimony given by the witness Mary K. Johnson at the Nelson trial one was that she did not engage in prostitution between November 11, 1952 and December 31, 1952 and did not hustle in Chicago, Illinois; second, that she did not use drugs as an addict in Chicago between November 11, 1952 and December 31, 1952; third, that she did not know she crossed a state line, and fourth, that she did not see Robert Bannarn about November 11, 1952. On the trial of the defendant she testified that her testimony on these questions given at the trial of Nelson was false and she also testified that the defendant induced her to give such false testimony. The testimony was all material to the issues involved in the Nelson case.

■ To sustain the charge of subornation in this case there must have been proof that the testimony given by Mary K. Johnson at the Nelson trial was false and this fact can only be established by the testimony of two witnesses or by the testimony of one witness and proof of corroborating circumstances. Hammer v. United States, 271 U.S. 620, 46 S.Ct. 603, 70 L.Ed. 1118; Hashagen v. United States, 8 Cir., 169 F. 396; Arena v. United States, 9 Cir., 226 F.2d 227; United States v. Palese, 3 Cir., 133 F.2d 600; Goins v. United States, 4 Cir., 99 F.2d 147. The question of the quantum of corroboration required by the rule is, however, for the jury. Weiler v. United States, 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed. 495; Doan v. United States, 9 Cir., 202 F.2d 674.

On the question of the corroboration of Mary K. Johnson's testimony that she testified falsely in the Nelson case that she did not engage in prostitution between November 11, 1952 and December 31, 1952, we need not go into the sordid

details recited by a number of witnesses, among them officers of the Chicago police department. We have examined the testimony and find it amply corroborates the testimony of Mary K. Johnson in the present case.

On the question of the use of narcotics the testimony of Mary K. Johnson given at the trial in the instant case was corroborated by testimony of police officers and by the testimony of a Mrs. Carlson and a Mrs. Warner. We have examined it and think it clearly sufficient to go to the jury on the question of corroboration.

On the question of the falsity of Mary K. Johnson's testimony given at the Nelson trial to the effect that she did not know whether she crossed a state line, corroboration is found in the testimony of Robert Bannarn and Rebecca Aron and other related circumstances.

The falsity of Mary K. Johnson's testimony given at the Nelson trial that she had not seen Robert Bannarn in Chicago about November 11, 1952 is corroborated by the testimony of a Mrs. Bowde who testified that Mary K. Johnson lived in an apartment building owned by her in Chicago with Robert Bannarn from November 11, 1952 to December 26, 1952, and by the testimony of Robert Bannarn to the same effect.

■ On this phase of the case we conclude that on the four matters submitted to the jury by the court's instructions there was ample evidence, if believed by the jury, to prove beyond a reasonable doubt that Mary K. Johnson committed perjury on the trial of the Nelson case.

■ It remain to consider whether the testimony was sufficient to go to the jury on the question as to whether the defendant induced Mary K. Johnson to give the above noted perjured testimony. While perjury must be established by the testimony of at least two witnesses or by the testimony of one witness and proof of corroborating circumstances, it is not necessary that the act of suborning perjury be so established. Doan v. United

States, supra; Catrino v. United States, 9 Cir., 176 F.2d 884; Cohen v. United States, 2 Cir., 27 F.2d 713; United States v. Silverman, 3 Cir., 106 F.2d 750; Outlaw v. United States, 5 Cir., 81 F.2d 805. Thus, in Doan v. United States, supra, which involved the charge of subornation of perjury, the applicable rule is stated as follows [202 F.2d 678]:

" * * * This means that while it was incumbent upon the Government to prove that the testimony given by Georgia Martin before the Grand Jury was false, and to prove that it was thus false by two independent witnesses, or by one such witness plus corroborating circumstances, yet as to the element of subornation of the perjury, that is to say, as to whether the defendant induced the commission of the perjury on her part, 'the proof is the same as in all other crimes,—proof beyond a reasonable doubt'."

In Catrino v. United States, supra, it is said, inter alia [176 F.2d 888]:

"In a subornation of perjury case, proof that the defendant *induced* the commission of the offense, is not subject to this requirement."

■ The witness Mary K. Johnson testified positively that the defendant in the instant case induced her to give this false testimony. If the jurors believed this testimony, as they manifestly did, it was sufficient to sustain the verdict. However, we find that her testimony in this regard finds corroboration in attending circumstances. There was testimony that defendant admitted to one Shelly Warren that he induced Mary K. Johnson to commit perjury in the trial of the Nelson case, and there was proof of defendant's words and acts of admission in attempting to impede the witness Rebecca Aron on the first trial of the instant case. These and other attending circumstances will be hereinafter considered in connection with the question of admissibility of evidence. The weight of the testimony and the credibility of the witnesses were questions for the

jury, at least as to this element of the offense charged, and we think, viewing the evidence in a light most favorable to the government, it was ample to prove this element of the offense beyond a reasonable doubt.

The government offered in evidence certain certificates of the Clerk of the court with attached documents designated as "Government Exhibits 3 and 4". The certificates were to the effect that the attached documents were true copies of docket entries, term minutes, Judge Nordbye's order setting aside the jury's verdict and granting motion for judgment of acquittal and the jury's verdict of guilty in the Nelson case. The offer was objected to as follows:

"Mr. Hammond: There is no objection by the defendant as to foundation. Defendant does object to the exhibits on the ground that they are, in the main, wholly irrelevant and immaterial and they put before the jury many matters that should not be before the jury.

"Mr. Ryan: As to material parts the witness can testify.

"Mr. Hammond: Most of the matters in here, that are listed in here, are things wholly irrelevant and immaterial to the trial of this case. We have no objection to Mr. Chell Smith testifying to material matters.

\* \* \* \* \* \*

"Mr. Hammond: We have the same objection to Government's Exhibit 4 on the ground that in the main the entries therein are irrelevant and immaterial to the trial of this case."

 The objection was overruled. The objection was a general one and does not point out any specific grounds for excluding the testimony. This being a case involving perjury it was incumbent on the government to prove that the perjured testimony alleged to have been given in the Nelson trial was given in a competent tribunal and that such testimony was material to the cause then on trial. In 41 Am.Jur., Perjury, Sec. 64, p. 35, it is said:

"Thus, in order to convict a person of perjury alleged to have been committed on the trial of a case in a court of record, the production of the record in that case or of a duly authenticated transcript thereof, is essential, unless the formal proofs of such judicial proceeding are waived or dispensed with by admission or otherwise."

We do not think this general objection called to the court's attention any specific ground for excluding the evidence, and in any event it could scarcely be said to be prejudicial.

 Complaint is made of the ruling of the court in admitting into evidence testimony of one Shelly Warren to the effect that defendant admitted to her that he had induced Mary K. Johnson to perjure herself in the Nelson trial. Complaint is also made of the ruling of the court in admitting into evidence testimony that defendant had attempted to impede one Rebecca Aron as a witness in the first trial of the instant case. The evidence was clearly admissible. The acts and words of the defendant were in the nature of admissions and they tended to corroborate the testimony of the witness Mary K. Johnson. Evidence of a defendant's attempt to tamper with or impede a witness is admissible as an act of admission. Carnahan v. United States, 8 Cir., 35 F.2d 96; Wallace v. United States, 7 Cir., 243 F. 300; DiCarlo v. United States, 2 Cir., 6 F.2d 364; Vause v. United States, 2 Cir., 53 F.2d 346. As this testimony was relevant and competent to prove acts in the nature of admissions of the crime charged, the mere fact that it may have tended to prove commission of another crime did not render it inadmissible. Bram v. United States, 8 Cir., 226 F.2d 858.

 It is urged that the court erred in permitting the defendant to be interrogated on cross-examination on matters not referred to in his direct

examination and particularly with reference to his income tax returns and with reference to whether Jimmy Baker's place was not a principal hang-out for Minneapolis prostitutes. Defendant, having taken the witness stand in his own behalf, was subject to cross-examination to the same extent as any other witness. That cross-examination might go to any fact in issue or to the impeachment of his credibility. United States v. Lowe, 3 Cir., 234 F.2d 919; United States v. Silver, 2 Cir., 235 F.2d 375. In accounting for his presence at 707 Bradford and at a so-called "Jimmy Baker's place" in Minneapolis, Minnesota, he had offered somewhat conflicting explanations. Mary K. Johnson had testified without objection that he told her, when talking to her prior to the Nelson trial, "Now if they ask you anything about the place at 707 Bradford, I don't want you to say that I own the house." In his testimony in chief he apparently attempted to leave the impression that the only occasion for his being in these places was in his capacity as an attorney because property of a deceased client needed to be attended to for the benefit of an estate and its heirs, and to see to the collection of rents for such estate. He later admitted that he was the owner of the property at 707 Bradford, and when being interrogated as to the collection of rents he himself suggested that he could not recollect the amounts collected but that his income tax returns would show. This was the occasion for producing certain income tax reports and interrogating him with reference thereto. They were not introduced in evidence and the cross-examination went to the credibility of the witness.

▬▬▬ Defendant was asked whether or not a so-called "Jimmy Baker's place" was not a principal hang-out for Minneapolis prostitutes. There was no objection and the witness answered, "I wouldn't know that." Thereafter, on motion of defendant's counsel, the question and answer were stricken and no prejudice could result therefrom. Ap-

parently defendant had a clientele frequenting these places, some of whom were confessedly prostitutes. The testimony went to the credibility of the defendant as a witness. We think it manifest that the testimony so produced on cross-examination, in view of all the other testimony in the case, could not have been prejudicial. The scope of cross-examination is to be left largely to the discretion of the trial judge and in the absence of an abuse of such discretion, or of a manifest miscarriage of justice, reversal may not be had. Christianson v. United States, 8 Cir., 226 F.2d 646; Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680. The question of the scope of cross-examination was considered by us in Christianson v. United States, supra, and in the course of the opinion in that case we said [226 F.2d 655]:

> "Error is charged on account of the cross-examination of the Defendant Paster. The general rules of cross-examination are well defined. They need not be restated. These general rules must have some flexibility in order that they may be properly applied to the great number of varied situations which arise. To accomplish the necessary flexibility and at the same time preserve the basic and substantive objectives of these rules, a considerable area of discretion is assigned to the trial court in applying the rules to a specific situation. Such a situation must be viewed and reckoned with by the trial court in the light of all related incidents occurring during the trial and cannot be confined to an isolated question or series of questions. While the questions complained of, which the court required Paster to answer, did not in themselves tend to prove or disprove the specific charge, they were sufficiently germane to portions of Paster's direct examination and statements of his counsel as to prevent the trial court's rulings from being an abuse of discretion."

We are of the view that the scope of cross-examination of this defendant permitted by the trial court did not constitute an abuse of discretion.

The defendant produced a number of character witnesses, some of whom were engaged in the practice of law. On cross-examination certain of these lawyer witnesses were asked the following question:

"Have you heard anything about the proceedings in the case of Max Herman against Joseph St. Dennis, which was in Municipal Court, City of Minneapolis, in October 1945, and have you heard whether in that trial the defendant, Mr. A. Ray Segal, presented to the Court and offered in evidence a card registered mail postal receipt in which it appeared that the date on the receipt had been rewritten from the time it had first been written, as to date, and that thereafter the postal authorities here in the City of Minneapolis testified that the date that was then apparently the date, the rewritten date on the card as offered in evidence, was an earlier date than the records of the Minneapolis Post Office Department, as testified to in that case showed. That thereafter Mr. Segal representing the plaintiff, whose case depended on the receipt, the claim of having been received on the date shown in the altered date, Mr. Segal then moved for dismissal of the case. Have you heard about that?"

Over objection the witnesses were permitted to answer, each of whom answered that he had not heard of the incident. At the time of permitting this question the court instructed the jury as follows:

"I instruct the jury that what is happening now is this: The defendant has called character witnesses, and the basis for the evidence given by those character witnesses is the reputation of the defendant in the community, and since the defendant tenders the issue of his reputation the prosecution may ask the witness if he has heard of various incidents in his career. I say to you that regardless of his answer you are not to assume that the incidents asked about actually took place. All that is happening is that this witness' standard of opinion of the reputation of the defendant is being tested."

Before giving the instruction the court asked counsel for defendant if he wished it to be given, to which counsel replied, "Yes". Out of the hearing of the jury, before propounding the foregoing question, government counsel produced convincing evidence that the incident referred to had a factual basis. While witnesses are called to support a defendant's so-called character they can and do in fact testify only to the good reputation or good name of the defendant. Hence, a witness called as a character witness may properly be cross-examined as to whether or not he ever heard of some incident that might have a bearing on his good reputation. Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168; Spalitto v. United States, 8 Cir., 39 F.2d 782; 2 Wigmore on Evidence, Sec. 988; Underhill on Criminal Evidence, 3rd Ed., Sec. 141. In Underhill on Criminal Evidence, supra, referring to the scope of cross-examination of a character witness it is said:

"But a witness to good character may be asked on cross-examination to test his credibility whether he has heard rumors of particular and specific charges of the commission of acts inconsistent with the character which he was called to prove, generally as to the grounds of his evidence, not so much to establish the truth of such facts or charges, as to test his credibility, and to determine the weight of his evidence. He may be asked if he has not heard some general report which contradicts the good reputation which he had been called upon to prove."

The witnesses here were simply asked whether or not they had heard of the incident referred to in the question. We think the cross-examination was eminently proper.

Defendant challenges the correctness of two instructions given the jury in the instant case. The court at the request of the government gave the following instruction:

"You are instructed that the fact that Mary K. Johnson has admitted that she had committed perjury in giving false testimony in the Donald Nelson cases is no defense to this defendant as she is not to be considered as an accomplice to the crime of subornation of perjury. The fact that she has been a prostitute and narcotic addict or at least narcotic user is no defense to this defendant. However, you are instructed that you should receive the testimony of Mary K. Johnson with care and caution."

■■■■■ Of course, the instructions must be considered as a whole and not by piecemeal. When so considered we think the instruction was a correct statement of the applicable law. Mary K. Johnson was not an accomplice of the defendant as the offenses of perjury and subornation of perjury are separate and distinct offenses, and Mary K. Johnson's perjury was no defense to defendant who was charged with subornation of perjury. United States v. Thompson, C.C. Or., 31 F. 331. It is to be noted that this instruction warns the jury that the testimony of Mary K. Johnson should be received with care and caution, and it will be observed too that the court in other instructions instructed the jury as to the credibility of witnesses, particularly noting that the testimony of Mary K. Johnson, who was in fact a prostitute and narcotic user, should be received with care and caution, and the court further meticulously instructed the jury that as to the falsity of the perjured testimony it must be corroborated, that the burden rested upon the government

to prove the defendant's guilt beyond a reasonable doubt and that the presumption of the defendant's innocence remained with him throughout the trial until such time, if ever, that he has been proven guilty beyond a reasonable doubt.

■■■ Complaint is also made of the following portion of an instruction given by the court:

"In considering whether or not the requirement of corroboration has been met, you may consider the testimony of other witnesses insofar as it bears upon the truth or falsity of such testimony and such facts and circumstances, if any there be, which tend to throw light on the truth or falsity of such testimony and such admissions by word or act, if any, as you may find to have been made on these matters by the defendant, Segel himself."

This instruction went to the question of corroboration and what facts, if proven, might be considered by the jury for that purpose. We have already considered the question in connection with the charge that the evidence of corroboration was insufficient to satisfy the rule that perjury must be established by the testimony of at least two witnesses or by the testimony of one witness and corroborating circumstances. There was before the jury the many circumstances referred to by us in discussing the question of the sufficiency of the evidence, and in addition to those circumstances specifically pointed out by us evidence was offered by the defendant himself in the nature of extra-judicial statements of Mary K. Johnson made to special agents of the Federal Bureau of Investigation which were consistent with her testimony to the effect that her testimony in the Nelson case was false. These statements contained the following recitals:

"On or about November 1, 1952 at approximately 12:00M at Olson Highway and Aldrich Ave. in Minneapolis, I met Donald Nelson after

he had finished his turn at driving a cab for the Yellow-Cab Co. I met Don Nelson and we went into Ampy's tavern, Olson Highway and Aldrich Ave. where we ate and it was at this time that I requested him to take me to Chicago, Ill. Don knew that I was a prostitute as I had, upon many occasions, discussed my hustling with him.

"Nelson and I were later joined by Becky Arons, a prostitute, (colored) who lived with Don Nelson and another man whose name I do not choose to mention. We four then discussed the trip and we finally agreed to go and to pay Nelson, twenty-five dollars plus gas. We left Minneapolis around 5:00 a. m. in Nelson's 1952 Buick Special, red in color. We thought the police were following us so we four, Becky Arons, Nelson, myself, and the fourth fellow drove very slowly for a time. In St. Paul we stopped at a gas station on Kellogg St. and had some difficulty with the operator as neither of us wanted to pay for the gas and as a result the operator of the station called the police and the police talked to us.

"We left St. Paul around 6:00 a. m. and we headed toward Chicago with Nelson driving. We travelled slowly as we thought we were being followed by the police and Nelson was real careful and drove around for some time before we drove across the state line. Nelson made sure that we were not being followed before we crossed into Wisconsin.

"On the trip Nelson kept asking us for the rest of the money which we refused to give him until we got to Chicago. We did not intend to pay him so we, meaning my friend and I, kept giving him Marijuana (reefer) cigarettes and Don and Becky discussed the possibility of them staying a few days in Chicago whereby Becky could turn some tricks. Becky had hustled in Chicago before and knew the town.

"We four traveled to a little town about 100 miles from Chicago when Nelson told us to get out as he knew by this time that we were not going to pay him for the trip. My friend and I got out of Nelson's car and caught a bus to Chicago. The trip cost us approximately $4.00 apiece from this little town in Wisconsin to Chicago. To the best of my knowledge, Nelson and Becky drove back to Minneapolis."

There was evidence of extra-judicial admissions by word and act of defendant, including admissions made to Shelly Warren and to one Dorothy Nelson, and his attempts to impede witness Rebecca Aron, and evidence of defendant's demeanor as a witness in his own behalf, including his evasive and contradictory testimony. This instruction made it clear to the jury what character of testimony might be considered as constituting corroboration. As heretofore indicated in this opinion the quantum of corroboration was for the jury (See Hashagen v. United States, supra) and, hence, the court very properly gave this instruction.

We have considered all the other contentions urged by the defendant but think they are without merit. Defendant has been twice tried; two juries have found him guilty; he has been represented by very able counsel, and on the whole record we think he has had a fair trial. The judgment appealed from is therefore affirmed.

A true copy.