Leonard SALDANA, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16233.

United States Court of Appeals
Ninth Circuit.

Dec. 7, 1959.

Rehearing Denied Feb. 18, 1960.

Hamley, Circuit Judge, dissented.

Stephen Reinhardt, Herbert A. Bernhard, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Bruce A. Bevan, Jr., Robert John Jensen, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before CHAMBERS, BARNES and HAMLEY, Circuit Judges.

CHAMBERS, Circuit Judge.

■ The judgment of conviction is affirmed. We hold that the second judge of the United States District Court for the Southern District of California was legally justified sua sponte under the circumstances of this case in ordering the plea of guilty on the first and second counts withdrawn (which plea had been entered before another judge of the same court) and directing the entry of a plea of not guilty.[1] Further, we are con-

1. Of the eleven authorized for the whole district, there are eight active district judges in the Southern District of California whose official station in the Central Division is Los Angeles. Under the local rules, and by rotation, each judge presides over the criminal calendar for a period of three months. In turn, he is succeeded by another. The judge presiding over the criminal calendar normally receives all pleas and imposes the sentences on the guilty pleas. Ordinarily,

vinced that the trial, after this change of plea, did not constitute double jeopardy [2] for the defendant.[3]

The fifth count, the subject of a ten year sentence for Saldana, only charged "sale and facilitation of sale." Obviously, under the testimony, Saldana was guilty of the crimes of possession of and transportation of unstamped narcotics,[4] but he was not charged with those crimes. We are of the opinion that under the evidence (upon which defendant could have had upon request proper instructions as to the elements of sale) it was a question of fact for the jury whether there was a sale as charged in the fifth count.[5]

he tries the short criminal cases. If his calendar does not permit him to hear the longer cases (over four days) he assigns them to other judges.

Here the first judge, presiding over the criminal calendar, on June 16, 1958, received a plea of not guilty from Saldana and his co-defendant, Albert Palomino. Trial was set by judge No. 1 to be held before judge No. 2 on July 15, 1958, a date within the upcoming term of service of judge No. 2 as presiding judge of the criminal calendar.

As the days for service of judge No. 1 on the criminal calendar grew fewer and fewer, Saldana appeared on June 26 before judge No. 1, withdrew his former plea as to counts one and two and entered a plea of guilty. At the suggestion of the district attorney, passing of sentence was postponed until after the trial of Palomino. The record shows quite clearly that the defendant wanted judge No. 1 to handle his case.

After postponements by judge No. 2, Palomino's trial was called for July 29. There was no trial on that date because Palomino had fled the jurisdiction. Shifting his attention to Saldana, judge No. 2 decided that he was not satisfied with the circumstances surrounding the plea of guilty on the first two of the five counts. Therefore, he entered the plea of not guilty for the defendant on counts one and two.

2. 5th Amendment to the Constitution of the United States: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb; * * *" See, thereon, the early leading case of United States v. Perez, 9 Wheat. 579, 6 L.Ed. 165.

3. The claim of double jeopardy and a claim that judge No. 2 was not authorized under the statutes or Federal Rules of Criminal Procedure to change a plea by his unilateral act can only by addressed now to count two because there was an acquittal on count one. There was a conviction on counts two, three, four and five. The plea of not guilty on counts three, four and five was never withdrawn,

never changed. Saldana did expect the district attorney to dismiss the indictment on counts three, four and five, but it never happened.

In making a very fine presentation of arguments of double jeopardy and of simple error as to the withdrawal of the pleas on counts one and two, counsel for appellant has overlooked Sinclair v. United States, 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692, and the legion of cases following it, e. g., our case of Doan v. United States, 9 Cir., 202 F.2d 674. Here in Saldana's case, his sentence on count two was concurrent with that of count three. The plea in count three was always "not guilty." And, count three seems amply supported by the evidence.

4. Saldana was arrested with some five ounces of heroin in hand. Simultaneously, Palomino, also at the scene, was arrested. During the initial excitement of the announced arrest Saldana tossed the bag containing the heroin to the agent Licuanan who had negotiated the purchase. No money, on this occasion, ever changed hands. Appellant says there was no sale. The briefs of the parties ignore this last incident. They meet the issue of sale on the assumption that there was neither consideration nor delivery. The government's position is that earmarking the heroin for delivery constituted a sale.

5. Our decision herein on the fifth count does not rest on the government's theory that "appropriation or segregation of goods for delivery" completes a sale. While one may think it improbable that Saldana, his arrest having been announced, intended to go ahead and complete the transaction. How can one know here as a matter of law what was in Saldana's mind when he threw the package to Agent Licuanan? And, if it is the state of his mind, it should be a jury question. And, as a jury man in appraising his state of mind, one might remember that at the moment he parted with the package defendant beyond cavil had the guilty knowledge of having been caught with the possession of the un-

We have examined all specifications of error and find those not mentioned hereinabove to be without substance.

Counsel's excellent presentation just overlooks the fact that there was never any plea of guilty or motion to dismiss on counts three, four and five. So the court was justified in going ahead on those counts. Had the court been less abrupt in proceeding, but firm nonetheless, defendant surely would have wanted to withdraw the guilty pleas on the first two counts. The court not being willing to dismiss the last three counts, it would appear that what the court did was eminently fair.

Judgment affirmed.

HAMLEY, Circuit Judge (dissenting).

I dissent from that part of the opinion which affirms the conviction on the fifth count. Saldana received a separate and independent sentence of ten years on that conviction.

In count five it is charged that on or about May 21, 1958, Saldana and one Albert Palomino "knowingly and unlawfully sold and facilitated the sale to Jayme Licuanan and Victor Segura of 10 ounces, 339 grains of heroin * * *," contrary to 21 U.S.C.A. § 174. Licuanan is a Treasury Department enforcement agent assigned to the Federal Bureau of Narcotics. Segura is a Ventura County, California, deputy sheriff.

Appellant seeks to set aside the conviction on this count on the ground that there was no substantial evidence that he sold or facilitated the sale of the heroin referred to in this count of the indictment.

Accepting as true the evidence submitted by the Government, the following facts appear: Licuanan, using the name Salvador, was introduced to Saldana on April 28, 1958, by a confidential informant. The agent represented that he was interested in buying heroin. Saldana indicated that the price would be two hundred dollars an ounce. Transactions thereafter occurred between the two on that day and on May 7 and 13, 1958. Those are dealt with in counts 1 to 4 of the indictment.

On May 13, 1958, Licuanan told Saldana that the next time he would place an order for approximately five ounces. Shortly thereafter, Licuanan told Saldana over the telephone that he, Licuanan, had been in contact with a man in San Francisco, who wanted to pick up five ounces of heroin. Saldana said, "Well, whenever you're ready, give me a call, and I'll fix it up for you." Licuanan, later sent Saldana a telegram from San Francisco stating that he, Licuanan, would be in Los Angeles at 1:00 p. m., on May 21, 1958, to "pick up" the five ounces.

At about 2:55 p. m., Licuanan and Segura arrived in a government automobile at a designated street address in East Los Angeles. They observed Saldana and Palomino in a station wagon, with Palomino in the driver's seat. Licuanan and Saldana got out of their respective cars and approached each other. Licuanan told Saldana that Segura was Licuanan's uncle, and stated that the "uncle" and the "man in San Francisco" each wanted five ounces of heroin. Saldana said, "That's fine," and spoke briefly with Palomino, who then drove away.

Shortly thereafter Palomino returned in the station wagon and parked behind the government vehicle. Saldana walked over to the station wagon and got in the front seat next to Palomino. Both Licuanan and Segura observed Palomino pick up a brown bag and hand it to Saldana. Licuanan testified: "When I observed this, I believe I asked Saldana if that was the stuff, and he said, 'Yes,' at which time I then ran towards the car and I placed Saldana and Palomino under arrest. Then Saldana threw the paper bag to me and started running."

stamped narcotics and having been seen transporting it. At such a time, he in excitement might complete the transaction. To say as a matter of law what was in the mind of Saldana, the majority herein thinks invades the province of the jury.

Another deputy sheriff who witnessed the incident testified that Saldana threw the brown bag at Licuanan after the latter had pulled his gun. The bag fell at Licuanan's feet and was later found to contain ten rubber tubes each containing heroin. Saldana was apprehended by other agents who were on the scene at the time.

The Government evidence, summarized above, indicates that there was at no time any passing of consideration to Saldana for the ten ounces of heroin involved in the May 21, 1958, transaction. Moreover, there was no physical transfer of the property from Saldana to Licuanan until after Saldana's arrest. The transfer which then occurred consisted of the throwing of the paper bag at Licuanan in the presence of other officers immediately preceding Saldana's attempt to escape.

The Government contends, however, that the sale was completed when Palomino handed the paper bag to Saldana while the two were seated in Palomino's station wagon. The majority states that its decision as to count five does not rest on this theory. It is therefore unnecessary for me to state the reasons why I believe the Government's position in this regard is untenable.

It appears to be the view of the majority that the evidence would warrant a jury finding that when Saldana tossed the paper bag to Licuanan a delivery of narcotics was effected which consummated the sale. The Government did not advance such a theory in its briefs or oral argument and, as the majority states, the briefs of the parties ignore the bag-tossing incident. It seems to me that, at the very least, appellant ought to be accorded an opportunity to present argument on this question before this court decides the case on this new theory.

I take it from footnote 5 that the majority recognizes that more than a physical transfer of possession had to be shown, for reference is made therein to Saldana's state of mind.

The state of mind necessary to effectuate a delivery pursuant to a contract of sale is a deliberate and voluntary intention to complete the transaction. This being so, I would think it close to a contradiction in terms to suggest, as the majority does, that "at such a time, he in excitement might complete the transaction." A transfer of possession made by accident (as where a farmer's cart full of apples overturns while passing a prospective buyer's establishment) is not a "delivery." Likewise, the prospective seller's transfer of possession to a buyer under great stress and excitement, caused by circumstances necessarily precluding successful completion of the transaction, is not in my opinion a "delivery."

The moment that Saldana was arrested at gun point he knew that Licuanan was not an ordinary customer. He also knew that Licuanan had never intended to make an ordinary purchase of narcotics. Saldana further knew that in any event a sale consisting of a delivery of narcotics and receipt of the purchase price could never be consummated. Since Saldana had this knowledge before he threw the paper bag at Licuanan, the jury could not have reasonably found that this act was intended as a delivery pursuant to a contract of sale.

It was probably but an involuntary reaction under the stress of the moment, or an effort to comply with what he construed to be a gunpoint demand for the bag. If he had any other purpose, it must have been to rid himself of the evidence or to distract attention while he attempted to escape. Any of these explanations fit with the established facts, but not the hypothesis that he was completing a sale for which he expected to be paid.

The state of Saldana's mind was a question of fact. The only direct proof of his state of mind is that which he himself furnished when he testified that this May 21, 1958, incident was not a sale. The jury, of course, was not required to believe Saldana. But the only other proof available was of a circumstantial nature consisting of what could reasonably be deduced from the surrounding

**356**

circumstances. The facts as to these circumstances are not in dispute.

Answering the majority's question, one cannot know here as a matter of law what was in Saldana's mind when he threw the package to Agent Licuanan. But the question of whether the circumstantial evidence was sufficient to warrant a jury finding that Saldana intended by such act to complete the sale is a question of law. I find not a single circumstance surrounding the event which would tend to show that Saldana had a deliberate and voluntary intention of consummating the sale. In my view all of the facts reviewed above concerning the bag-tossing incident indicate that he could not have had such an intention. Considering the fact that the Government must prove each element of its case beyond a reasonable doubt, I am of the opinion that the conviction on the fifth count should be reversed.