## UNITED STATES v. SILVERMAN.
### Nos. 6994, 6995.

Circuit Court of Appeals, Third Circuit.

Sept. 7, 1939.

Leonard L. Kimball, of Pittsburgh, Pa., for appellant.

Charles F. Uhl, U. S. Atty., and George Mashank, A'sst. U. S. Atty., both of Pittsburgh, Pa.

Before BIGGS, CLARK, and BUFFINGTON, Circuit Judges.

CLARK, Circuit Judge.

In the famous "Tea Suits", before Mr. Justice Washington, the prosecution attempted, albeit unsuccessfully, to file one thousand separate libels against each of one thousand chests of allegedly smuggled tea. Wharton, Criminal Practice and Pleading Sec. 294. A desire to remove the temptations which gave rise to redundancies such as this, led, we are told, to the passage in 1853 of "An Act to Regulate the Fees and Costs to be allowed Clerks, Marshals, and Attorneys of the Circuit and District Courts of the United States, and for other Purposes", Act Feb. 26, 1853, 10 Stat. 161; and see Summers v. U. S., 231 U.S. 92, 104, 105, 34 S.Ct. 38, 58 L.Ed. 137. A surviving fragment of that statute governs the case at bar. It reads: "When there are several charges against any person for the same act or transaction, or for two or more acts or transactions connected together, or for two or more acts or transactions of the same class of crimes or offenses, which may be properly joined, instead of having several indictments the whole may be joined in one indictment in separate counts; and if two or more indictments are found in such cases, the court may order them to be consolidated." 18 U.S.C.A. § 557.

Appellant, however, feels that this statutory solicitude for the public purse (and incidentally the accused's pocketbook) is carried too far in his case. He fastens upon the other horn of the dilemma, prejudice in the eyes of a jury. He was twice indicted: First, on two counts, for suborning one John Doe to commit perjury on June 30 and on July 17, 1937; second also on two counts, for perjuring himself on October 8, and on November 15, 1937. The four perjuries are all of the same type—false bail bond affidavits—although each re-relates to a different criminal proceeding. In one indictment the affiant impersonates the real owner of the offered property and the defendant member of the bar suborns him to do so. In the other, the defendant offers his own property but understates the amount of the mortgage covering it. At the commencement of the trial appellant attacked the consolidation of the two indictments with a motion for severance. It was denied, and he was convicted and sentenced on both. The sentences, however, were imposed concurrently.

We observe at the outset that the indictments are not directed, and give no indication of being directed, to "connected transactions". That being so, the three cases the district attorney has seen fit to cite us are clearly beside the point. The principle upon which they are rested has been expressed with both scholastic exactitude and judicial aptness:

"The practical expediency of a single trial for offenses so concatenated that the witnesses to each are identical should outweigh a bare possibility of prejudice." 48 Harvard Law Review 510 (note).

"Cannot the king call a man to account for a breach of the peace because he broke two heads instead of one?" Lord Mansfield in R. v. Benfield, 2 Bur. 980.

Our inquiry, then, must be under the third clause of the statute. Are the separate crimes charged "of the same class", and may they be "properly joined"?

Perjury and its subornation have been defined and considered as part and parcel of the same offence. 3 Coke Institutes 167; 2 Bishop Criminal Law, Secs. 1056, 1197. They were treated as such by the Congress in the Act of April 3, 1790, Ch. 9, Sec. 18, 1 Stat. 116. Their separation into two cognate sections in subsequent revisions of this original statute, 18 U.S.C.A. §§ 231, 232, hardly imports a difference in substance. Any general distinction between perpetration and procurement (cf. "suborn—to prepare, provide or procure, especially in a secret or underhand manner", 2 New Century Dictionary p. 1682) no longer obtains. 18 U.S.C.A. § 550; and see Ruthenberg v. United States, 245 U.S. 480, 483, 38 S.Ct. 168, 62 L.Ed. 414. Indeed, the only reason for setting subornation of perjury apart from perjury seems to lie in an archaic and for our purposes negligible differential in the method of proof. 2 Bishop Criminal Law 1198. In the eighteenth century a conviction for perjury on the testimony of less than two witnesses came to be considered an impossibility due to the metaphysical equipoise, of "oath against oath". Wigmore, Required Number of Witnesses; A Brief History of the Numerical System in England, 15 Harvard Law Review 85, 106–108. This rule has since been relaxed so as to permit conviction on the corroborated testimony of one

witness. On the other hand, subornation of perjury, which involves no clash of ·oath against oath (except perhaps with respect to the falsity ·of the suborned assertion) has been held to be properly established by the uncorroborated testimony of one witness. Hammer v. United States, 2 Cir., 6 F.2d 786; 10 Minnesota Law Review 167 (note).

■ The prescription "which may properly be joined" brings into action no rule of thumb, but rather the sound discretion of the trial court exercised to prevent undue prejudice to the accused. Pointer v. United States, 151 U.S. 396, 14 S.Ct. 410, 38 L. Ed. 208; Gardes v. United States, 5 Cir., 87 F. 172, 173; Dolan v. United States, 8 Cir., 133 F. 440; United States v. Lotsch, 2 Cir., 102 F.2d 35, certiorari denied, 59 S.Ct. 793, 83 L.Ed. 1500; ·1 Bishop New Criminal Procedure, Secs. 424, 425; Zoline Fed. Criminal Law & Procedure, Sec. 178; 11 Nebraska Law Bulletin 415; 48 Harvard Law Review, above cited._ See also New York Code of Criminal Procedure, Sec. 279; The Indictments Act 1915 (5 & 6 Geo. 5, C. 90) Sec. 5 (3); American Law Institute Code of Criminal Procedure, Official Draft (1931) Sec. 185. The forms which that prejudice may take have been variously described:

"As was pointed out by· Talbot, J. in R. v. Southern (1930, 22 C.A.R. 9), a multiplicity of charges of the same kind of crime may of itself lead the jury to infer the guilt of the accused wtihout paying sufficient attention to the weight of the actual evidence adduced in support of each of the separate alleged offences. Again, numerous counts may simply lead to a mistrial owing to general confusion of what evidence was germane to each of the several charges; thus in R. v. Stapley (1934, 25 C.A.R. 43), the Lord Chief Justice adversely commented upon an indictment for false pretences containing 24 counts. Yet another reason why it may be undesirable that the jury should consider more than one charge at a time may be that one of the crimes alleged is so serious that they ought to. give their undivided attention to that crime alone. In R. v. Jones (1918, 1 K.B. 416) the indictment contained two counts, one for murder, the other for robbery. The appellant was tried simultaneously on both counts and convicted upon each. The Court of Criminal Appeal quashed the conviction for robbery and stated that no other charge ought to be tried with a charge of murder." Joinder of Offences in Indictments, 84 Law Journal 42 (English).

"Frequently, .the mere fact of accusing him of several things was supposed to tend to insure the probability of his being found guilty, as it amounted to giving evidence of bad character against him." Blackburn, J., in Castro v. Queen, 1881, 6 App.Cas. 229.

"I pause here to express my decided opinion that it is a scandal that an accused person should be put to answer such an array of ·counts containing as these do several distinct charges. Though not illegal, it is hardly fair to put a man upon his trial for such an indictment, for it is almost impossible that he should not be grievously prejudiced .as regards each one of the charges by the evidence which is being given on the others." Hawkins, J., in Queen v. King (1897) 1 Q.B.D. 216.

"But it should not be permitted where the crimes charged are of such a nature that the jury might regard one as corroborative of the other, when, in fact, no corroboration exists." Kidwell v. United States, 38 App.D.C. 566.

The choice between economy and prejudice appears to have been a difficult one for state legislatures. In some of our jurisdictions the indictment is limited by statute to but one offence; in others it is not, American Law Institute, Code of Criminal Procedure, Official Draft above cited, at pp. 589, 590; and see 37 Columbia Law Review 1027 (comment). Parliament and the Congress have each experimented in search of a happy medium. The Criminal Procedure Act, 1851, 14 & 15 Vict. C. 100, Sec. 16, confined indictments for larceny to three separate offences committed within a period of six months. In this country indictments for mail frauds were similarly restricted in 1889, 25 Stat. 873. Yet both statutes were repealed; one after ten years trial, 24 & 25 Vict. C. 95, Sec. 1; the other after twenty, 35 Stat. 1156, Cr. Code § 215, 18 U.S.C.A. § 338; , and see Stern et al. v. United States, 2 Cir., 223 F. 762; and the assurance of the statute under which we are proceeding was made doubly sure by ·the Congress in the Volstead Act, which provided: "In any affidavit, information or indictment for the violation of this chapter, separate offences may be united in separate counts and the defendant may be tried on all at one trial * * *" 27 U.S. C.A. § 49. The courts on the other hand

have exhibited a far greater unanimity. When not expressly prevented by statute, the joinder of separate crimes of the same class has been almost universally sustained, Stern et al. v. United States, above cited; McNeil v. United States, 5 Cir., 246 F. 827; Jennings v. United States, 8 Cir., 264 F. 399; Rose v. United States, 4 Cir., 295 F. 687; Harris v. United States, 5 Cir., 8 F.2d 841; Steinberg v. United States, 2 Cir., 14 F.2d 564; Hankins v. United States, 5 Cir., 67 F.2d 317; United States v. Sullivan, 2 Cir., 98 F.2d 79; United States v. Lotsch, above cited; Sheppard v. State, 104 Neb. 709, 178 N.W. 616, 18 A.L.R. 1074; State v. Nelson, 29 Me. 329; Branch v. State, 76 Fla. 558, 80 So. 482; Gutenkunst v. State, 218 Wis. 96, 259 N.W. 610; contra Kidwell v. U. S., above cited. See also United States v. Daugherty, 269 U.S. 360, 46 S.Ct. 156, 70 L.Ed. 309; Ashe v. United States ex rel. Valotta, 270 U.S. 424, 46 S.Ct. 333, 70 L.Ed. 662; People v. Vario, 165 Misc. 842, 2 N.Y.S.2d 611, 613, 618.

The editors of the Minnesota Law Review have, we think, made an appropriate generalization: "Apart from statutory limitations, it is submitted that the only fundamental objection to joinder proceeds from the notion that a jury is likely to use evidence adduced in support of one charge to convict accused of another charge not independently nor adequately proved. Whether or not such improper use of evidence is likely, and therefore whether or not joinder should be permitted, would seem to depend on the nature of the offenses and the effect of their consolidation in each case rather than on a fixed general rule or classification of offenses." 22 Minnesota Law Review 113.

Such "improper" use of evidence should, of course, be carefully distinguished from the impropriety inherent in a violation of the rules against admitting evidence of similar crimes in the ordinary criminal case. These have their source, not only in the "over strong tendency to believe the defendant guilty of the charge merely be-cause he is a likely person to do such acts", 1 Wigmore on Evidence, Sec. 194—a consideration which, standing alone, appears to have but little influence on the law of evidence, 2 Wigmore on Evidence, Sec. 1904; and see United States v. Lotsch, above cited, at page 37—but also in considerations of surprise and confusion, which disappear when the similar crime is separately charged in the indictment, 1 Wigmore on Evidence, Sec. 194; Simpkins v. United States, 4 Cir., 78 F.2d 594, 598.

All the matters in the record before us, disclosed and undisclosed, tend to sustain the decision of the learned trial judge. We know that the crimes charged are not as serious as murder, cf. R. v. Jones, above cited; nor as inflammatory to the jury as sexual offences, cf. Kidwell v. United States, above cited; nor so overwhelmingly numerous as to present a prima facie likelihood of prejudice, cf. Queen v. King, above cited. We know, too, that as it turned out, appellant did not at any time feel sufficiently "confounded in his defense" to request the court to compel an election between the counts. On the other hand, the record filed under Rule 8 contains no transcript of the proceedings at the trial. We do not know, therefore, whether the transactions were shown to be actually connected by a common scheme, or whether evidence of one perjury would have been admissible anyhow on the issue of another. See 1 Wigmore on Evidence, Sec. 342; United States v. Wood, 14 Pet. 430, 432, 437, 443, 10 L.Ed. 527; Williamson v. United States, 207 U.S. 425, 28 S.Ct. 163, 52 L.Ed. 278. Nor can we ascertain to what extent any possible prejudice was minimized by the charge, cf. Rex v. Bailey (1924) 2 K.B. 300; Rex v. Southern, 22 Criminal Appeal Rep. 7. Under these circumstances, the impossibility, a fortiori, of finding an abuse of discretion, is self-evident.

The judgment of the district court is affirmed.