## UNITED STATES v. NETTL.

### No. 7591.

Circuit Court of Appeals, Third Circuit.

June 23, 1941.

Robert J. Fitzsimmons, of New York City (Michael Breitkopf, of Newark, N. J., on the brief), for appellant.

Irwin L. Langbein, Sp. Asst. to Atty. Gen., of Washington, D. C. (William F. Smith, U. S. Atty., of Newark, N. J., on the brief), for appellee.

Before BIGGS, CLARK, and JONES, Circuit Judges.

CLARK, Circuit Judge.

We are quite aware of the meaning of the "substantial prejudice"[1] of the statute which defines reversible error for the guidance of the appellate courts.[2] Because the Congress has seen fit to adjust the balance between the community and its accused members, those courts should be all the more zealous in their protection of those unfortunate individuals from actual injustice. We think the case at bar is a typical example of exactly that. The appellant was convicted of conspiracy to transport in interstate commerce, to receive and to sell stolen goods so transported with knowledge that the goods were stolen.[3] He took the stand in his own defense. On cross-examination, the United States Attorney asked him the questions of which he now complains. They read:

"Q. Mr. Nettl, you say you were never convicted of a crime? A. No, sir.

"Q. Weren't you convicted of *receiving goods in New York?*

"Mr. Fitzsimmons (defendant's counsel): That is objected to as incompetent, irrelevant and immaterial,—I think Mr. Smith has the proper information by which he knows that there was never a conviction on Mr. Nettl's record.

"The Court: He has a right to ask whether he was.

"Q. I am just asking if he was convicted of receiving stolen goods *in* 1939. A. No, sir.

"Q. You were *not?* A. Never." Stenographer's Minutes, p. 135 (italics ours).

The record therefore shows that the defendant was not convicted of receiving stolen goods in New York.

The damaging effect of so-called "other crime evidence" is recognized.[4] The jury may receive an impression that defendant is an habitual criminal or probably committed the crime charged.[5] So behaviorism is sacrificed to possible prejudice and such testimony restricted to proof of indentity, intent, motive, system, etc.[6] Even here the earlier cases permitted it only in the exigency of no other available evidence.[7] Nevertheless, this

---

[1] 28 U.S.C.A. § 391.

[2] Townsend v. United States, 3 Cir., 106 F.2d 273; United States v. Silverman, 3 Cir., 106 F.2d 750.

[3] 18 U.S.C.A. §§ 415, 416.

[4] 22 C.J.S., Criminal Law, § 682.

[5] Criminal Law — Evidence — Other Crimes—Proof of Intent And Knowledge, 10 Iowa Bulletin 245 (note).

[6] Evidence—Similar Facts And Occurrences—Crimes Similar To One In Issue, 26 Harvard Law Review 656 (note); Evidence—Inadmissibility of Past Crimes—Exceptions, 69 University of Pennsylvania Law Review 180 (note); Criminal Law—Evidence of Other Offenses Showing System, 20 Michigan Law Review 235 (note); Evidence—Criminal Law—Intoxicating Liquor—Illegal Sales—Proof of Offenses Other Than the One in Issue—Admissibility Where Other Acts Are Part of a System, 7 Minnesota Law Review 591 (note); Evidence—Intent—Proof by Similar Acts, 23 Columbia Law Review 306 (note).

[7] Evidence—Criminal Law—Admissibility of Proof of Substantial Offenses Other Than the One in Issue, 11 Minnesota Law Review 666 (note).

very testimony is received for another purpose. It can be used for testimonial impeachment even though the witness happens to be a defendant in a criminal case.[8] The trial judge is believed capable of insulating the jurors' minds and causing them to consider the crime only in so far as it affects credibility.

The relevancy of bad moral character to the issue of veracity is acknowledged.[9] There have been differences of opinion over the kind of conduct that suggests the probability of a man's being a liar.[10] The crime inquired about in the principal case is one of cunning and is included by the strictest standards. Professor Wigmore points out that there is what he calls an "auxiliary policy" that may preclude proof of bad character by extrinsic testimony.[11] He says that "confusion of issues" and "unfair surprise" attend all such proof other than the record of conviction itself.[12]

The learned Professor argues that the "auxiliary policy" vanishes when the proof is offered other than through question and answer on cross-examination.[13] He concedes, as he must, that both the courts and the legislatures are sharply divided.[14] As an example of that division, we have only to compare the statutes of Pennsylvania[15] and New Jersey.[16] Logically Professor Wigmore is right. There is however, we think, this argument ad hominem. To permit this type of question assumes the prosecuting official is what the jury believe him to be, a person interested only in securing justice.[17] Such a thought, perhaps, has caused some courts to guard carefully against any abuse in this field of cross-examination.[18]

---

[8] 3 Wigmore on Evidence, 3d Ed., § 890, Defendant Impeachable as an Ordinary Witness.

[9] 3 Wigmore on Evidence, 3d Ed., Chapter 32, A, Moral Character.

[10] 1 Wigmore on Evidence, 3d Ed., § 193, Particular Bad Acts to show the Defendant's Character: 3 Wigmore on Evidence, 3d Ed., § 922 Kind of Character; Veracity as the Fundamental Quality; § 923 Same: the Rule in the various Jurisdictions; § 982 Relevancy of Acts, on Cross-examination; Kinds of Misconduct.

[11] 3 Wigmore on Evidence, 3d Ed., § 979 Particular Acts of Misconduct, not provable by Extrinsic Testimony.

[12] 3 Wigmore on Evidence, 3d Ed., § 979, above cited; § 980 Record of Judgment of Conviction of Crime.

[13] 3 Wigmore on Evidence, 3d Ed., § 981 Cross-examination not Forbidden.

[14] 4 Wigmore on Evidence, 3d Ed., § 1270 Copy of a Record of Conviction, as preferred to the Convict's Testimony on Cross-examination; cf. Wharton's Criminal Evidence § 474; Underhill on Criminal Evidence §§ 60, 61; Thompson on Trials § 467.

[15] "Hereafter any person charged with any crime, and called as a witness in his own behalf, shall not be asked, and, if asked, shall not be required to answer, any question tending to show that he has committed, or been charged with, or been convicted of any offense other than the one wherewith he shall then be charged, or tending to show that he has been of bad character or reputation; unless * * * [not pertinent here]." 19 P.S. Pa. § 711.*

* Discussed in Criminal Procedure— The Accused As Witness—Evidence of Former Conviction, 71 University of Pennsylvania Law Review 173 (note).

[16] "For the purpose of affecting the credibility of any witness, his interest in the result of the action, proceeding or matter or his conviction of any crime may be shown by examination or otherwise * * *." N.J.S.A. 2:97-13.

[17] "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314.*

* Noted in Criminal Law—Misconduct of Attorneys During Trial—Possible Remedies, 34 Michigan Law Review 1044; Improper Conduct of Prosecuting Attorney as Ground for Reversal, 26 Journal of Criminal Law 276.

[18] Williams v. United States, 8 Cir., 3 F.2d 129, 135, 41 A.L.R. 328.

 Even the authority already cited[19] agrees that the cross-examiner is bound by the witness' answer.[20] The United States Attorney in the case at bar refused to be so bound. After receiving the negative answer he pursued the subject in three further questions. Two of them included the mention of substantially the crime currently charged; one added a specific date, and the other a specific place of and for its commission. The third is in the form which lends itself most readily to voice inflection. The effect of innuendo, insinuation, and the specious framing of questions has been considered in the cases.[21] Its prejudicial character scarcely requires elaboration. Two early cases say, we think, all that need be said:

"A review of the evidence in this case suggests very forcibly, that however full may be the explanations, a list of questions which assume the existence of damaging facts, may be put in such a manner, and with such persistency and show of proof, as to impress a jury that there must be something wrong even though the prisoner fully denies it, and there is no other evidence." Gale v. People, 1872, 26 Mich. 157.

"The purpose of the questions clearly was to keep persistently before the jury the assumption of damaging facts which could not be proven, and thus impress upon their minds the probability of the existence of the assumed facts upon which the questions were based. To say that such a course would not be prejudicial to defendant is to ignore human experience and the dictates of common sense." People v. Mullings, 1890, 83 Cal. 138, 23 P. 229, 231, 17 Am.St.Rep. 223.

It is true that some of the authorities make the curious suggestion that the matter is affected by a subjective standard applied to the District Attorney.[22] We cannot understand how the accused is interested in the personal character of his accuser. The prosecutor may be disciplined.[23] But it hurts the defendant just as much to have prejudicial blasts come from the trumpet of the angel Gabriel.[24]

The judgment is reversed and a new trial is ordered.

[19] Professor Wigmore.

[20] 3 Wigmore on Evidence, 3d Ed., § 1005 Facts discrediting the Witness in respect to Moral character, Bias, Corruption, Skill, Knowledge, etc.

[21] An Iowa court said: "We are unable to understand why prosecuting attorneys persist in thus infracting the well-established rules of practice. This court has repeatedly warned prosecutors about these dangers, and it seems rather strange that in spite of these warnings prosecutors persist in this practice. * * * [They should realize] that the matter about which they were inquiring would fall as a *subtle poison* against the defendant in the minds of the jury * * *." State v. Poston, 199 Iowa 1073, 203 N.W. 257, 258 (italics ours).

Cf. Trial Practice—Improper Examination Designed to Discredit Witness Before Jury, 26 Michigan Law Review 123 (note); Evidence—Witnesses—Improper Cross-Examination of Defendant in Criminal Prosecution, 29 Columbia Law Review 526 (note); Evidence—Impeachment of Witnesses—Specific Acts of Misconduct, Indictments and Convictions, 8 Texas Law Review 588 (note).

[22] Clark v. United States, 57 App.D.C. 335, 23 F.2d 756; Chicago, B. & O. R. Co. v. Kelley, 8 Cir., 74 F.2d 80.

[23] Pope v. Boston & M. R. R., 79 N.H. 52, 104 A. 403.

[24] Apt v. United States, 8 Cir., 13 F. 2d 126; Mercer v. United States, 3 Cir., 14 F.2d 281; Speiller v. United States, 3 Cir., 31 F.2d 682; Beck v. United States, 8 Cir., 33 F.2d 107.