[Crim. No. 3581. Fifth Dist. Dec. 28, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
CLIFFORD GALLOWAY, Defendant and Appellant.

**COUNSEL**

Paul Halvonik and Quin Denvir, State Public Defenders, under appointment by the Court of Appeal, and Gary S. Goodpaster, Chief Assistant State Public Defender, for Defendant and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Robert D. Marshall and Karen Ziskind, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**FRETZ, J.*—**This is an appeal from the judgment and sentence imposed after a conviction of one count of robbery. The appellant was one of three persons charged with the May 21, 1977, robbery of Jose Arreola and Miguel Diaz in Lemoore. The other two people charged by the information filed on June 30, 1977, were Cynthia Zeno and Andrew Gordon. Zeno's case was severed and set for separate trial. Gordon failed to appear on the trial date, and his case was also severed from appellant's trial.

Appellant raises four issues.

I. Was it prejudicial error and a denial of due process for the prosecutor to question appellant about his failure to mention his alibi to anyone prior to trial?

II. Was it prejudicial error for the prosecutor to comment upon appellant's postarrest silence in closing argument to the jury?

III. Was it prejudicial misconduct for the prosecutor to repeatedly argue that appellant was a friend of Cynthia Zeno, an alleged participant in the robbery, when the record did not clearly establish her as one of the robbers?

*Assigned by the Chairperson of the Judicial Council.

IV.   Was it prejudicial error to modify CALJIC No. 2.20 by excluding the language, "A statement made by [a witness] that is inconsistent with any part of his testimony; . . ." so as to foreclose the jury from considering the full range of factors bearing on the evaluation of a witness' credibility?

We conclude that the conviction must be reversed because of certain questions asked and arguments made by the prosecutor, as we shall explain.

## THE FACTS

Jose Arreola and Miguel Diaz, longtime friends, returned from Lenny's Bar, where they had been drinking, to Jose's apartment with two women. Miguel and one of the women went into the bedroom where an act of sexual intercourse occurred. About one-half hour after the two women arrived, there was a knock at the kitchen door. Someone answered the door. Two black men put Miguel and Jose against the wall with their hands on the wall. They took Jose's wallet with $8 in it. They then moved Jose and Miguel to a bedroom-living room where they were allowed to sit on the bed. The men searched the premises, broke open a locked suitcase, took money, tools and clothing while one of the women stood by the door with a hammer. During the event, Miguel Diaz tried to leave the apartment, but one of the two men grabbed him, and a woman hit him on the neck with the hammer.

Jose Arreola testified at trial through an interpreter. He identified appellant as one of the men.

By stipulation, the testimony of Miguel Diaz given at the preliminary examination was read to the jury. He said he and Jose sat on the bed half an hour while the two men searched the suitcase, etc.

Officer John Moreno testified he observed the ransacked room and suitcase and that a hammer was on the bed.

The only defense witness was the appellant. He denied having any knowledge of the robbery. He testified that, to the best of his memory, he was in Fresno on May 21, 1977, at Jeani's Rocking Horse Inn.

■■■■■■■■

## DISCUSSION

## I

Appellant testified on cross-examination that just a few days after May 21, 1977, he learned that he was being charged with a robbery. He also testified that the first time he had told anyone of his whereabouts on May 21, 1977, was at the time of trial, September 20, 1977. During cross-examination, the prosecutor questioned the appellant about his failure to mention his alibi to anyone prior to the time he took the stand as a witness.[1]

The United States Supreme Court in *Doyle* v. *Ohio* (1976) 426 U.S. 610, 620 [49 L.Ed.2d. 91, 99, 96 S.Ct. 2240], held that it was fundamentally unfair to allow an arrested person's silence following *Miranda* warnings to be used to impeach an explanation subsequently offered at trial. California has also recognized the existence of *Doyle* error in the context of prosecutorial examination. (See *People* v. *Farris* (1977) 66 Cal.App.3d 376, 387-390 [136 Cal.Rptr. 45].)

The respondent argues that there was no *Doyle* error in this situation for two reasons: (1) The prosecutor's remarks were not directed toward appellant's silence, but rather to demonstrate his difficulty in recollecting his whereabouts; and (2) *Doyle* error only occurs when the prosecutor inquires about a defendant's failure to talk to law enforcement officers after he has been given his *Miranda* rights. We cannot agree.

■■■ The prosecutor may have intended initially to demonstrate appellant's difficulty in recollection, but after the appellant remembered going to Jeani's Rocking Horse Inn, he asked the question, "This was the first time you have told anyone where you were on May the 21st, 1977, is that correct?"

---

[1]"Q. *Well, it was just a few days after the 21st that you were notified that you were being charged with a robbery; wasn't it?*
"A. Somewhere along about that time. I don't recall just what time it was.
".   .   .   .   .   .   .   .   .   .   .   .   .
"Q. *This was the first time you have told anyone where you were on May the 21st, 1977, is that correct?*
"A. To the best I can remember.
"Q. And now all of a sud 'en you do remember?
"A. Like I say, I am having a hard time going back that far because of the time." (Italics added.)

■■■■■■

As the United States Supreme Court said in *Doyle*: "After an arrested person is formally advised by an officer of the law that he has a right to remain silent, the unfairness occurs when the prosecution, in the presence of the jury, is allowed to undertake impeachment on the basis of what may be the exercise of that right." (*Doyle* v. *Ohio, supra,* 426 U.S. at p. 619, fn. 10 [49 L.Ed.2d at p. 422].)

This unfairness was also noted by the court in *United States* v. *Hale* (1975) 422 U.S. 171, 180 [45 L.Ed.2d 99, 107, 95 S.Ct. 2133]: "The danger is that the jury is likely to assign much more weight to the defendant's previous silence than is warranted. And permitting the defendant to explain the reasons for his silence is unlikely to overcome the strong negative inference that the jury is likely to draw from the fact that the defendant remained silent at the time of his arrest." (Fn. omitted.) When combined with the prosecutor's closing arguments, the purpose of his questions was clearly to convey the impression appellant's explanation was fabricated.

■ Respondent's second argument as to why there was not *Doyle* error is that *Doyle* only applied to questions directed to a defendant's failure to talk to *police* after he has been arrested and given his *Miranda* rights. Since the prosecutor here only questioned appellant on his failure to talk to "*anyone,*" respondent submits that no error took place.

Although a majority of federal cases concerned with this error involve silence before law enforcement personnel, respondent reads *Doyle* too narrowly. In *People* v. *Farris, supra,* 66 Cal.App.3d at pages 389-390, the court held that questions such as "*No one? You told no one* before the preliminary hearing that Armelin and Nettles were the people that got out of that van?" constituted error under *Doyle,* albeit of a harmless nature. (Italics added.)

Federal cases have also established that suspect questioning does not have to refer exclusively to a defendant's failure to talk with policemen. In *United States* v. *Harp* (5th Cir. 1976) 536 F.2d 601, 602, footnote 2, the court reversed two convictions because a prosecutor in his closing jury remarks stated, "Now doesn't it make sense that if the facts had been like the defendants said they had been, that they would have told *somebody*?" (Italics added.) Similarly, the court in *Reid* v. *Riddle* (4th Cir. 1977) 550 F.2d 1003, 1004, found prejudicial error when the prosecutor asked the defendant on cross-examination whether he told "De-

tective Duke *or anybody*" about his self-defense claim. (Italics added.) Because the prosecutor's question in this case resembled those in *Farris, Harp* and *Riddle*, the interrogatory involved here is properly categorized as a *Doyle* error.

We will consider the effect of the error after a discussion of the claimed misconduct in argument.

## II

In addition to his cross-examination, the prosecutor twice argued that appellant, while examined as a witness, remembered and told people for the first time where he was on May 21, 1977.[2] In *United States* v. *Henderson* (5th Cir. 1978) 565 F.2d 900, 905, the court condemned similar actions of a prosecutor in commenting upon an accused's silence while being searched by a prison guard: "The obvious purposes of the prosecutor in commenting on appellant's silence was to convey the impression to the jury that he was guilty or else he would not have remained silent when searched, and also to suggest that his later explanation was fabricated. These remarks of the prosecutor were highly prejudicial,..."

The arguments to the jury in the present case emphasized the appellant's "sudden recollection" about being at a bar. The prosecutor's arguments are subject to the same reasoning and the same cases which made his prior questioning about the fact that appellant had not pre-

---

[2]On the first occasion, the prosecutor said: "*What doesn't make sense, testimony of Frank Anderson, his story told for the first time today about he is, and he knew he was being charged with this robbery as he testified a few days after May the 21st, yet, his story is that he, he doesn't remember where he is at,* even though we have got Andrew Gordon, his friend, we have got Cynthia Zeno, his other friend both connected with and identified, as well as him identified by these witnesses. Well, it's my argument that if there is an acquittal in the case, would be simply something that doesn't follow the evidence. *What has happened, he has come in at the last minute, come up with this story he can't remember anything. It's very convenient. It's very difficult to impeach anyone who can't remember where they were because you can't obviously produce witnesses to know they weren't there.*"(Italics added.)

The prosecutor reiterated this argument a short time later when he noted: "*The evidence in this case was Mr. Frank Anderson knew what the charges were and just a few days after May the 21st, and yet, his story for the first time* the, you can't really make sense out of the story. I don't know whether he is saying yes he was with George Smith or no he wasn't there, *but all of a sudden, today, he comes with this, being in this bar, and he can't remember the people that he was around or anything else.* That's all he has got to do to rebut [*sic*] witnesses under oath that testified on June the 15th and testified today that they were, this, this was the man that did the robbery." (Italics added.)

viously mentioned his alibi to anyone improper. The arguments constituted prosecutorial misconduct.

■ Having decided that a *Doyle* mistake in questioning occurred, it must be determined whether the prosecutorial acts constituted reversible error. The test for gauging the harmfulness of *Doyle* error was summarized by a federal court in *Morgan* v. *Hall* (1st Cir. 1978) 569 F.2d 1161, 1166 (cert. den. (1978) 437 U.S. 910 [57 L.Ed.2d 1142, 98 S.Ct. 3103]). "Both *Hale* and *Doyle* suggested, however, that in some instances prosecutorial comment on post-arrest silence, although unconstitutional, might constitute a harmless error under the standard of *Chapman* v. *California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In *Hale* the defense had objected promptly to the questioning and received a careful instruction from the court. The court of appeals nevertheless held the error was not harmless, and the Government did not press the point before the Supreme Court. 422 U.S. at 175 n. 3, 95 S.Ct. 2133. In *Doyle* the state did not contend the error was harmless. 426 U.S. at 619-620, 96 S.Ct. 2240. But the Court's recognition of the issue implied the applicability of the principle." Under *Chapman,* before a federal constitutional error can be held harmless, a court must declare that it could have had no effect upon the verdict and was harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824 , 24 A.L.R.3d 1065].) *Chapman* involved prosecutorial misconduct in commenting on defendant's failure to testify at trial, and the court found prejudicial error due to the "machine-gun repetition" of the comments and the fact that the state's case presented only a "reasonably strong 'circumstantial web of evidence'" against the defendants. (*Id.,* at pp. 25-26 [17 L.Ed.2d at p. 711].) Cases following *Chapman* indicate that a reviewing court must assess the record as a whole to determine the probable impact of the improper evidence on the jury. (See *Schneble* v. *Florida* (1972) 405 U.S. 427, 430 [31 L.Ed.2d 340, 344, 92 S.Ct. 1056]; *Harrington* v. *California* (1969) 395 U.S. 250, 254 [23 L.Ed.2d 284, 287-288, 89 S.Ct. 1726]; *United States* v. *Lopez* (9th Cir. 1978) 575 F.2d 681, 685; *Morgan* v. *Hall, supra,* 569 F.2d at p. 1166; cf. *United States* v. *Meneses-Davila* (5th Cir. 1978) 580 F.2d 888, 893 ("fact-dependent determination handled on a case-by-case basis").) Several factors bearing on the prejudicial impact of a constitutional error such as *Doyle* were enumerated in *People* v. *Modesto* (1967) 66 Cal.2d 695 [59 Cal.Rptr. 124, 427 P.2d 788] (cert. den. *sub nom., Modesto* v. *Nelson* (1967) 389 U.S. 1009 [19 L.Ed.2d 608, 88 S.Ct. 574]) and *People* v.

*Farris, supra,* 66 Cal.App.3d 376. *Modesto* suggested that prejudice is demonstrated (1) if the evidence against defendant is less than overwhelming, and (2) if the improper comment touched "a live nerve in the [appellant's] defense,..." (*People v. Modesto, supra,* 66 Cal.2d at p. 714.) In addition, *Farris* held that the harmful impact of a *Doyle* error had been ameliorated when the trial court gave a strong curative instruction. (*People v. Farris, supra,* 66 Cal.App.3d at p. 390.) ▮ When these standards for measuring prejudice are applied to the present case, the harmfulness of the error becomes apparent.[3]

▮ First, although the prosecutor's questioning and remarks about the postarrest silence did not reach the proportions of "machine-gun repetition," the record does reveal that the fact was repeated *twice* during closing arguments. This reemphasis of appellant's silence since charges were filed supports the theory that it *might* have materially influenced some jurors in reaching the verdict.

Second, it cannot be stated that the evidence against appellant was of an overwhelming nature. In spite of the fact that both Jose Arreola and Miguel Diaz identified appellant as one of the robbers, their credibility as witnesses was tarnished by the discrepancy in their testimony about the women.[4] As appellant aptly points out, the instant case is essentially a battle between the credibility of the two prosecution witnesses and appellant's alibi defense. Unlike *Modesto,* where the prosecution's case

---

[3]In the case at bar, the error complained of consists of prosecutor's improper cross-examination of the reasons for appellant's silence (a *Doyle* mistake) and the prosecutor's reemphasis in closing arguments before the jury (prosecutorial misconduct). In connection with the *Doyle* error, it is clear that the *Chapman* standard on harmless error applies. However, the traditional standard for judging the effect of prosecutorial misconduct is whether it is "reasonably probable that a result more favorable to the defendant would have occurred had the district attorney refrained from the comment attacked by the defendant." (*People v. Beivelman* (1968) 70 Cal.2d 60, 75 [73 Cal.Rptr. 521, 447 P.2d 913].) Recently, in *People v. Bolton* (1979) 23 Cal.3d 208, 214-215 [152 Cal.Rptr. 141, 589 P.2d 396], the Supreme Court strongly indicated that a prosecutor's closing argument could be so improper as to create federal constitutional error requiring review under the *Chapman* standard.

Given the fact that the prosecutor's closing remarks in this case accentuated the erroneous cross-examination occurring earlier, it appears proper to test prejudice through application of *Chapman.* (See *People v. Bolton, supra,* 23 Cal.3d at pp. 214-215, fn. 4.)

[4]E.g., Jose testified that only Miguel made arrangements for an act of prostitution, that the woman came to Jose's apartment accompanied by a girl friend who did not enter the apartment. Miguel testified he and Jose left the bar with two women with whom arrangements for acts of prostitution had been arranged, that both women came into the apartment.

was "compelling and largely unchallenged" (*Modesto, supra,* 66 Cal.2d at p. 714), appellant was convicted on evidence by two witnesses containing factual variations. This falls short of the compelling situations which have been deemed harmless beyond a reasonable doubt.

Third, and most important to this appeal, the prosecutor's actions did touch a "live nerve in the defense" when he attacked appellant's alibi. In *Modesto,* the comments by the prosecutor were harmless because they infringed upon defenses, "one of which was inherently implausible and the other of which turned upon evidence of defendant's intoxication, a subject which the challenged comment in no way touched." (*Modesto, supra,* 66 Cal.2d at p. 714.) Appellant's *sole* defense involves, however, the acceptance of his testimony about being in Fresno at the time of the crime. The prosecutor's remarks about silence constituted a direct challenge to the credibility of the one exculpatory defense presented by appellant. Although respondent correctly states that the prosecutor here did not suggest that an inference of guilt could be extracted from silence alone, this ignores the fact that *Doyle* and its offspring were concerned with *improper impeachment by a mere reference to a defendant's silence.* In an analogous factual pattern involving both strong prosecution evidence and *Doyle* error, a federal court affirmatively stated, "The case turned entirely on credibility, and the Commonwealth's Attorney used an unconstitutional means to attempt to discredit the defendant's testimony. Accordingly, the error cannot be considered harmless." (*Reid* v. *Riddle, supra,* 550 F.2d at p. 1004.) Given the similarity to the case at bar, the rationale supporting a determination of prejudicial error is equally applicable.

Finally, there is no demonstration that the trial court offered a curative instruction purging the taint of the prosecutor's error. The trial judge did not immediately admonish the jury to ignore the questions or closing remarks about postarrest silence. The only instruction of potential value was offered after all evidence was presented. In accord with the language of CALJIC No. 1.02 (3d ed. 1970) the judge admonished that the jury "must not consider as evidence any statement of counsel made during the trial" or "never speculate to be true any insinuation suggested by a question asked a witness." Many federal circuit courts have expressed serious reservations about the efficacy of curative instructions when dealing with *Doyle* violations. (See *United States* v. *Johnson* (5th Cir. 1977) 558 F.2d 1225, 1230; *Reid* v. *Riddle, supra, 550 F.2d at p. 1004; United States* v. *Impson* (5th Cir. 1976) 531 F.2d

274, 278, cert. den. (1978) 434 U.S. 1050 [54 L.Ed.2d 803, 98 S.Ct. 900].) Those cases holding such errors to be harmless have stressed not the presence of curative instructions but the overwhelming evidence of guilt. (See *Moore* v. *Cowan* (6th Cir. 1977) 560 F.2d 1298, 1302, cert. den. (1978) *sub nom., Smith* v. *Cowan,* 436 U.S. 960, and *Moore* v. *Cowan,* 435 U.S. 929; *Stone* v. *Estelle* (5th Cir. 1977) 556 F.2d 1242, 1246, cert. den. (1978) 434 U.S. 1019 [54 L.Ed.2d 767, 98 S.Ct. 742]; *United States* v. *Wycoff* (9th Cir. 1976) 545 F.2d 679, 682, cert den. (1977) 429 U.S. 1105 [51 L.Ed.2d 556, 97 S.Ct. 1135]; *Jones* v. *Wyrick* (8th Cir. 1976) 542 F.2d 1013, 1014-1015, cert. den. (1977) 430 U.S. 956 [51 L.Ed.2d 807, 97 S.Ct. 1603].) Other decisions have ruled the error harmless because defendant did not present an exculpatory story that his silence would impeach. (See *United States* v. *Sklaroff* (5th Cir. 1977) 552 F.2d 1156, 1162, cert. den. *sub nom., Goldstein* v. *United States* (1978) 434 U.S. 1009 [54 L.Ed.2d 751, 98 S.Ct. 718]; *Chapman* v. *United States* (5th Cir. 1977) 547 F.2d 1240, 1249, cert. den. (1977) 431 U.S. 908 [52 L.Ed.2d 393, 97 S.Ct. 1705]; *Booton* v. *Hanauer* (1st Cir. 1976) 541 F.2d 296, 299.) In *People* v. *Farris, supra,* 66 Cal.App.3d at page 390, the court found a *Doyle* violation nonprejudicial when the trial judge sustained objections to the flawed questions and gave a strongly worded limiting instruction.[5] Since no curative instruction was expressly directed to appellant's responses about his postarrest failure to communicate, appellant's situation is distinguishable from the factual setting in *Farris.* In light of the law suggesting that general limiting instructions are insufficient in instances where postarrest silence affects a crucial exculpatory defense in a less-than-overwhelming case, remarks of the prosecutor aimed at impeachment of appellant's alibi appear to be prejudicial under the *Chapman* standard.

Thus, reversible error was committed when the prosecutor interrogated appellant about his failure to mention his absence from the scene of the robbery to other people and when he commented upon such postarrest silence in closing jury arguments.

---

[5]The trial judge in *Farris* instructed the jury in pertinent part that: "'After a defendant has been advised of his rights..., his failure to discuss the facts of his case with anyone other than his attorneys or explain or deny evidence against him before he testifies in his own defense during the trial does not create a presumption of guilt, or an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and defendant's guilt beyond a reasonable doubt.'" (*People* v. *Farris, supra,* 66 Cal.App.3d at p. 390, fn. 9.)

### III

In addition to the *Doyle* error, appellant urges that the prosecutor committed prejudicial misconduct when he stated in closing arguments that Cynthia Zeno was one of the robbers and then proceeded to elaborate on the fact that appellant and Zeno were friends. Appellant claims this allegation was harmful because the record did not contain any evidence suggesting Zeno was a robbery accomplice. Since the prosecutor stressed the ties between appellant and Zeno in argument to the jury, it is contended that the People's attorney attempted to impermissibly establish the guilt of appellant by mere association. Because guilt by association offends state constitutional principles (see *People* v. *Chambers* (1964) 231 Cal.App.2d 23, 28 [41 Cal.Rptr. 551]; cf. Cal. Const., art. VI, § 13), appellant prays for reversal based on such prosecutorial misconduct.

At trial, Jose Arreola identified appellant as one of the robbers. In addition, the preliminary hearing testimony of Miguel Diaz (which was read to the jury) pinpointed appellant and Andrew Gordon as the robbers. Neither witness *expressly named* Zeno as an accomplice to the robbery. Nevertheless, the prosecutor made statements to the jury during closing arguments going far beyond the testimony that a "woman" participated in the robbery with appellant.[6] Because trial testimony never clearly pinpointed Cynthia Zeno as the "woman" involved with the

---

[6]"[I]t was the first degree robbery that occurred, since a deadly weapon was used, that being the hammer used by Cynthia Zeno or that, or Deborah Jackson as she is known, . . .

"       .       .       .       .       .       .       .       .       .       .       .       .       .

"Now, Mr. Arreola and the testimony of Mr. Miguel Diaz, which was read to you, they are the same all the way down the line. They testified identified the people. They in fact identified Andrew Gordon, Andrew Gordon was identified by Miguel Diaz as well as the other witness. They identified Andrew Gordon. *Guess what, it just so happens Mr. Frank Anderson here knows Andrew Gordon, and so what we have is a circumstance just so happened this unlucky defendant, I guess that would be the argument, just so happened they pick out Mr. Frank Anderson as being there for a whole hour in their apartment.* It's not like we have a witness here that just saw these fellows for a few minutes, and then saw them in the dark, though they were actually in the residence of Miguel Diaz for an hour searching through their belongings, going through their things, taking their money. *They saw their faces over a period of time, and just so happened that two people, well, three people that are picked out happen, just so happen they know each other. He testified that he knew Deborah Jackson or Cynthia Zeno for six months prior to this time. So that's a circumstance that you should consider in this case. I think that's one of the biggest circumstances.*

"       .       .       .       .       .       .       .       .       .       .       .       .       .

"The rest of the testimony was then Deborah Jackson or Zeno picked up the hammer at one point, . . .

"       .       .       .       .       .       .       .       .       .       .       .       .       .

"[W]e have got Cynthia Zeno, his other friend both connected with and identified, as well as him identified by these witnesses." (Italics added.)

robbers,[7] appellant assigns prejudicial error to the prosecutor's injection of supposed facts not in evidence before the jury during closing arguments.

██ It is undisputed that appellant's counsel did not challenge the references made to Zeno by the prosecutor during the arguments to the jury. The general rule is that this would prevent appellant from pursuing the error. However, there is an exception when the case is closely balanced and the prosecutorial misconduct is such as to contribute materially to the verdict. (See *People v. McDaniel* (1976) 16 Cal.3d 156, 176 [127 Cal.Rptr. 467, 545 P.2d 843], cert. den. (1976) 429 U.S. 847 [50 L.Ed.2d 119, 97 S.Ct. 131]; *People v. Perez* (1962) 58 Cal.2d 229, 247 [23 Cal.Rptr. 569, 373 P.2d 617, 3 A.L.R.3d 946]; *People v. Beryman* (1936) 6 Cal.2d 331, 337 [57 P.2d 136]; *People v. Ortiz* (1979) 95 Cal.App.3d 926, 934, fn. 6 [157 Cal.Rptr. 448]; *People v. Meneley* (1972) 29 Cal.App.3d 41, 58 [105 Cal.Rptr. 432].) Although appellant's case was close because of the credibility battle between the prosecution witnesses and his own alibi defense, it cannot be said that the misconduct materially affected the verdict in light of reasons discussed below.

██ The prosecutor's statements were highly improper, since he was inviting the jury to speculate about "evidence"—Cynthia Zeno's presence as the "woman" at the robbery—never presented at/trial. The California Supreme Court has warned "'that statements of facts not in evidence by the prosecuting attorney in his argument to the jury constitute misconduct.'" (*People v. Bolton, supra,* 23 Cal.3d 208, 212; *People v. Kirkes* (1952) 39 Cal.2d 719, 724 [249 P.2d 1]; see also *People v. Taylor* (1961) 197 Cal.App.2d 372, 381-384 [17 Cal.Rptr. 233].) Nonetheless, in the absence of prejudice to the fairness of a trial, prosecutorial misconduct will not trigger reversal. (*People v. Bolton, supra,* 23 Cal.3d at p. 214; *People v. Lambert* (1975) 52 Cal.App.3d 905, 911 [125 Cal.Rptr. 404].) The test of prejudice for misconduct not involving federal constitutional error is whether it is "'reasonably probable that a result more favorable to the defendant would have occurred had the district attorney refrained from the comment attacked by the defendant.

---

[7]As respondent suggests, the failure to identify Zeno as the "woman" in the robbery was probably due to an oversight by the prosecuting attorney at the preliminary hearing. In testimony adduced at the initial proceeding, Miguel Diaz identified the woman who participated in the robbery, although her name was not recorded in the segment of the preliminary hearing transcript read at trial. Although the preliminary hearing record amply indicates that Diaz was testifying about Zeno, this evidence was omitted from the stipulated portion read at trial. Thus, an apparent omission by the state's at-

[Citations.]'" (*People* v. *Bolton, supra,* 23 Cal.3d at p. 214, quoting *People* v. *Beivelman, supra,* 70 Cal.2d 60, 75.) Applying these standards to the instant factual setting, several reasons justify the conclusion that no prejudice resulted here from the prosecutor's comments.[8]

First, the district attorney stated to the jury that he was not trying appellant by association.

Second, since the prosecutor was attempting to stress corroborative identification to negate the discrepancies between the stories of Jose and Miguel, it is doubtful the jury interpreted the comments as urging guilt by association.

Third, the prosecutor told the jury that they would be instructed that what he said was not evidence, and the judge gave CALJIC No. 1.02 to the jury as the prosecutor had predicted.

Whether we examine the evidence to see if the misconduct materially contributed to the verdict or for the purpose of determining prejudice to the fairness of the trial, the result is the same.

The misconduct did not materially contribute to the verdict; thus, the appellant cannot raise this objection. Even if he could, the misconduct did not prejudice the fairness of the trial. Hence, this was not reversible error.

## IV

■ Appellant argues that the trial court erred when it gave a modi-

torney at trial kept the jury from learning the proper reference for the "woman" at the robbery.

[8]Respondent suggests that the prosecutor did not commit misconduct because his reference to Zeno was not made in bad faith. This argument is unavailing in light of recent language by the Supreme Court. In *People* v. *Bolton, supra,* 23 Cal.3d at pages 213-214, the court stated: "Numerous decisions by our courts suggest that 'bad faith must be shown to establish the existence of misconduct....' (*People* v. *Romo* (1975) 47 Cal.App.3d 976, 987 [121 Cal.Rptr. 684]; see also *People* v. *Rhinehart* (1973) 9 Cal.3d 139, 154 [107 Cal.Rptr. 34, 507 P.2d 642]; *People* v. *Asta* (1967) 251 Cal.App.2d 64, 86-87 [59 Cal.Rptr. 206].) *For the purpose of deciding whether to reverse a decision or grant a mistrial,* this emphasis on intentionality is misplaced. '[I]njury to appellant is nonetheless an injury because it was committed inadvertently rather than intentionally.' (Note, *The Nature and Consequences of Forensic Misconduct in the Prosecution of a Criminal Case* (1954) 54 Colum.L.Rev. 946, 975; see also *United States* v. *Nettl* (3d Cir. 1941) 121 F.2d 927, 930.) Therefore, to the extent that cases in this jurisdiction imply that misconduct must be intentional before it constitutes reversible error, they are disapproved."

fied version of CALJIC No. 2.20 (3d ed. 1970), (about credibility of witnesses) which excluded the phrase "A statement made by [a witness] that is inconsistent with any part of his testimony; . . ." More specifically, it is appellant's contention that Jose Arreola, a key prosecution witness, made inconsistent statements with respect to his participation in an act of prostitution, and that the stricken phrase was erroneously omitted.

At trial, Arreola testified that he had previously seen the woman who accompanied Miguel Diaz to the apartment at Lenny's Bar. Earlier, during his preliminary hearing testimony, Arreola stated that he had never seen the woman at the bar in question. Because of this discrepancy, appellant assigns error in the trial court's deletion of the instructional section regarding inconsistent statements.

Penal Code section 1127 states that the trial court shall inform the jury in all cases that the jurors are the exclusive judges of all questions of fact submitted to them and of the credibility of the witnesses. Evidence Code section 780 states that the jury "may consider in determining the credibility of a witness any matter that has any tendency in reason to prove or disprove the truthfulness of his testimony" and then lists 11 specific factors to be considered in gauging credibility. In *People* v. *Rincon-Pineda* (1975) 14 Cal.3d 864 [123 Cal.Rptr. 119, 538 P.2d 247, 92 A.L.R.3d 845], the California Supreme Court instructed that all applicable portions of CALJIC No. 2.20 should be given *sua sponte* by trial courts when alleged victims testify for the prosecution. It stated: "We deem it appropriate instead to reaffirm and reinforce the existing instructions as to the credibility of witnesses which must presently be given—at least in part (see Pen. Code, § 1127)—*sua sponte* by the trial court in every criminal case. Thus the substance of the instruction set forth as CALJIC No. 2.20 should henceforth always be given, and while those paragraphs thereof inapplicable under the evidence may be omitted, the paragraphs alerting the jury to the bearing on the credibility of a witness of the 'existence or nonexistence of a bias, interest, or other motive' and the attitude of the witness 'toward the action in which he testifies or toward the giving of testimony,' should be given in any case in which the victim of the alleged offense has testified for the prosecution, regardless of whether specific evidence of any motive or disposition to misstate facts on the part of the complaining witness has been adduced by the defendant." (*Id.*, at pp. 883-884, fn. omitted.) Since the trial court here deleted the provision about inconsistent statements, error was committed. At least

one strand of Arreola's testimony—relating to whether he had ever seen the woman with Miguel at a certain bar—was in contradiction with later statements on the same subject. Thus, the court erroneously omitted *applicable* paragraphs of the credibility instruction from the jury's consideration.

Respondent submits that no error occurred because (1) *Rincon-Pineda* only requires *sua sponte* instruction about "...'bias, interest, or other motive'" and "attitude of the witness," and (2) there was no objection by appellant to the modified instruction.

Adoption of respondent's interpretation results in an unduly narrow reading of *Rincon-Pineda.* That case suggests that CALJIC No. 2.20 should be given *sua sponte* in its entirety, *except* for "those paragraphs inapplicable under the evidence." (Accord Use Note, CALJIC No. 2.20 (4th rev. ed. 1979) p. 40.) Since there was a discrepancy in certain testimony offered by Arreola, the trial court mistakenly omitted this factor from the jury's consideration. This result is confirmed by this court's decision in *People* v. *Martinez* (1978) 82 Cal.App.3d 1 [147 Cal.Rptr. 208]. In *Martinez,* the trial court excised from CALJIC No. 2.20 that one of the matters to be considered was a witness' "admission of untruthfulness," the 11th factor listed in Evidence Code section 780. Since one of the prosecution's experts admitted that his trial testimony varied from previous statements made at the preliminary hearing, this court found that the lower court erred in deleting the excised instructional language. (*People* v. *Martinez, supra,* 82 Cal.App.3d at pp. 19-20.) The same rationale applicable in *Martinez* compels a finding of error in appellant's case.

Respondent's argument that the error is unreviewable because of a failure to object is without merit. *Rincon-Pineda* creates an affirmative duty for the trial court to instruct *sua sponte.* Such an obligation should prevail in spite of appellant's failure to challenge the modified instruction. (Cf. *People* v. *Gutierrez* (1978) 80 Cal.App.3d 829, 837 [145 Cal.Rptr. 823].)

Notwithstanding the fact that error was committed, no apparent prejudice resulted from the trial court's mistake. ■ Whether a jury has been instructed correctly is determined from examining the entire charge of a court. (See *People* v. *Rhodes* (1971) 21 Cal.App.3d 10, 20-21 [98 Cal.Rptr. 249].) The absence of an essential element in one instruction may be supplied by another or cured in light of the instruc-

tions as a whole. (See *People* v. *Salas* (1975) 51 Cal.App.3d 151, 156 [123 Cal.Rptr. 903]; Witkin, Cal. Criminal Procedure (1963) Trial, § 491, p. 496.) ■ In appellant's case, the court adequately instructed the jury on witness credibility by reading the following admonitions: CALJIC Nos. 2.20, 2.21 (discrepancies in testimony), and 2.22 (weighing conflicting testimony). This pattern of instructions, coupled with the trivial nature of the inconsistency in Arreola's testimony, indicates that it is not reasonably probable that a result more favorable to defendant would have occurred had the excised instructional language been included. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

Accordingly, the error in modifying CALJIC No. 2.20 so as to foreclose the jury from considering the impact of inconsistent statements on a witness' credibility was harmless.

The judgment is reversed.

Brown (G. A.), P. J., and Hopper, J., concurred.