Filed 6/6/14  P. v. Gregory CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE


**THE PEOPLE,**

    **Plaintiff and Respondent,**          **A137593**

    **v.**                              **(San Francisco County**
                                          **Super. Ct. No. 218651)**

**MICHAEL GREGORY,**

    **Defendant and Appellant.**

_____/


A jury convicted appellant Michael Gregory of battery causing serious bodily injury (Pen. Code, § 243, subd. (d))[1] and assault with a deadly weapon (§ 245, subd. (a)(1)) and found true the allegation Gregory personally used a knife in the commission of the battery (§ 12022, subd. (b)(1)).  The court placed Gregory on probation with various terms and conditions.

On appeal, Gregory argues: (1) the prosecutor committed misconduct during closing argument; (2) the court's failure to compel the victim to appear and testify at trial violated his constitutional right of confrontation; (3) the probation condition regarding his possession of weapons must be modified to impose a knowledge requirement; and (4)

---

[1]     Unless otherwise noted, all further statutory references are to the Penal Code.

1

certain fines and fees "not orally ordered" at the sentencing hearing "must be stricken" from the court's sentencing minute order.

We modify the probation condition at issue to impose a knowledge requirement. We also strike from the court's sentencing minute order certain fines and fees not orally imposed by the court at the sentencing hearing. In all other respects, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*Prosecution Evidence*

Gregory was in an intimate relationship with Rodney McKinley from 2000 to 2012. Gregory lived in McKinley's room at a residential hotel (the hotel) in the Tenderloin neighborhood of San Francisco. In July 2012, a San Francisco police officer went to the hotel because "there was a fight." The officer arrested McKinley, who had outstanding traffic warrants. McKinley was intoxicated but cooperative.

In August 2012, McKinley and Gregory broke up and Gregory began dating a woman. The two men argued about the breakup and McKinley taunted Gregory about his new relationship. On an afternoon in August 2012, McKinley was sitting in a chair outside the hotel. He yelled at Gregory, who was standing across the street, and threatened: "'I'm going to beat your ass'" and "'I'm going to [expletive] you up[.]'" McKinley — who appeared drunk — approached Gregory and "kind of acted like he was going to beat [Gregory] up." McKinley then walked back to his chair and sat down.

Shortly thereafter, Gregory crossed the street, approached McKinley, and "used a jabbing motion and stepped back." Surveillance video from a nearby business captured the stabbing and showed McKinley sitting in his chair for about three minutes before Gregory stabbed him. The video did not show McKinley making any "wild" motions with his hands or interacting with anyone before the stabbing. The prosecution played a recording of the surveillance video for the jury. Blood gushed out of McKinley's stomach. Gregory walked away; McKinley was taken to the hospital, where he had

surgery to repair a lacerated liver.  At the hospital, McKinley told police officers Gregory usually carried a "'buck knife'" and described how Gregory stabbed him.[2]

Police officers detained Gregory and found a knife matching the description given by McKinley.  Officers interviewed Gregory, who appeared intoxicated.  The prosecution played a recording of the interview for the jury.  Gregory admitted stabbing McKinley, but claimed he did so with his fingernail.  He said McKinley had stabbed him in the past and explained McKinley had "pushed" his "button" on the day of the incident.  Gregory described the stabbing of McKinley as "tit for tat" and did not claim he acted in self-defense.

*Defense Evidence*

Several witnesses described incidents where McKinley was "violent toward" Gregory: he shoved Gregory down the stairs, held Gregory up against a wall, and kicked him.  Gregory testified McKinley was violent and abusive toward him during their relationship and described how McKinley stabbed him and punched him the face, giving him a bloody lip.  He also described the August 2012 incident, initially claiming he stabbed McKinley because he thought McKinley had a knife and was going to use it.  Later, however, Gregory admitted he had not seen McKinley with a knife on the day of the incident.  An expert on intimate partner battering testified about patterns of domestic violence and opined Gregory's relationship with McKinkley contained a "cycle of violence" and that Gregory's stabbing of McKinley was consistent with intimate partner battering.

*Verdict and Sentencing*

The jury convicted Gregory of battery causing serious bodily injury (§ 243, subd. (d)) and of assault with a deadly weapon (§ 245, subd. (a)(1)).  The jury found true the allegation Gregory personally used a deadly weapon in the commission of the battery (§

---

[2]     After six attempts, an investigator for the prosecutor's office personally served McKinley with two subpoenas to appear and testify at trial.  McKinley ignored the subpoenas and the court admitted statements he made to the police at the hospital.  The prosecution played an audio recording of his statements for the jury.

12202, subd. (d)(1)).  Gregory moved for a new trial on several grounds, including prosecutorial misconduct.  The court denied the motion, finding "no prejudicial let alone highly prejudicial or impermissible conduct by [the prosecutor], who has comported herself extraordinarily professionally throughout this case, as has [defense counsel]."

At the sentencing hearing, the court sentenced Gregory to state prison for three years, suspended imposition of sentence, and placed him on probation with various terms and conditions.  The court orally ordered: "You shall possess no weapons, and by weapons I'm including any knives of the sort that were used in this instance."  The court's sentencing minute order, however, states, "Defendant not to possess knives."

At the sentencing hearing, the court also orally imposed a $240 restitution fine (§ 1202.4, subd. (b)), a $40 court operations assessment (§ 1465.8, subd. (a)), and a $30 criminal convictions assessment (Gov. Code, § 70373).  The court's sentencing minute order, however, includes additional fines and fees not orally imposed at the sentencing hearing, including: (1) a $240 restitution fine "per convicted felony count" (1202.4, subd. (b)); (2) a $240 probation revocation restitution fine (§ 1202.44); (3) "probation costs up to an amount of $50 per month" (§ 1203.1b, subd. (a)); (4) a $150 presentence investigation fee (§ 1203.1b, subd. (a)); and (5) a $135 booking fee (Gov. Code, § 29550.2).

## DISCUSSION

### I.
### *Gregory's Prosecutorial Misconduct Claim Fails*

Gregory contends the prosecutor committed misconduct during closing argument by appealing to the jury's passion and prejudice, shifting the burden of proof, misstating the law, and denigrating the defense and defense expert.  "'"A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process."'"  [Citations.]  Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves "'"the use of deceptive or reprehensible methods to attempt to persuade

4

either the court or the jury.'"'" [Citations.]" (*People v. Hill* (1998) 17 Cal.4th 800, 819 (*Hill*), overruled on another point in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.)

    A.    The Prosecutor's Comments Regarding Gregory's Return to the Community

Gregory contends the prosecutor committed "classic misconduct" during rebuttal argument by telling the jury "You're in control of the streets of San Francisco; you're the conscience of the community. If you feel that what the Defendant did was reasonable and lawful, then you walk him out of the courtroom give him . . . his knife back, and he'll be going back to the Tenderloin." The court overruled defense counsel's objections and the prosecutor continued with her rebuttal by arguing the evidence established beyond a reasonable doubt Gregory was guilty of the charged crimes.

While the jury was deliberating, defense counsel argued the prosecutor committed misconduct by "appealing to the passions and prejudice generally of the jury" by telling jurors "if they were to find [Gregory] not guilty, that they would basically be telling him to go on his way and return his knife to him, to . . . stab someone else." The court disagreed, concluding: "I obviously observed very closely both closing argument[s]. Both counsel were impassioned. Both counsel were advocating for their clients. But I did not, contrary to the objections that were made, I do not believe that the People overstepped the line of advocacy. I do not find that the People ventured into the . . . prohibited area of seeking to arouse the sympathy or biases of the jury."

On appeal, Gregory reprises the argument that the prosecutor's statement improperly appealed to the jury's passion or prejudice. While we agree it is improper for a prosecutor to appeal to the passion or prejudice of a jury (*People v. Young* (2005) 34 Cal.4th 1149, 1195) we are not persuaded the prosecutor committed misconduct here. The prosecutor's invocation of the jury's role as the "conscience of the community" was not an improper appeal to the jury's passion or prejudice. Our high court has rejected the argument Gregory makes — that it is "improper for the prosecutor to state that the jury acted as 'the conscience of the community'" — and has observed "[o]ne function of the

5

jury is to represent the community." (*People v. Jones* (1997) 15 Cal.4th 119, 185-186, overruled on another point by *Hill*, *supra,* 17 Cal.4th 800.)  Additionally, the prosecutor's comment about Gregory returning to the Tenderloin with his knife, when taken "in the context of the argument as a whole[,]" (*People v. Dennis* (1998) 17 Cal.4th 468, 522) did not urge the jury to convict for reasons unrelated to the crimes charged.  The prosecutor made the comment following a lengthy argument focusing on why the evidence established Gregory's guilt beyond a reasonable doubt.

Assuming for the sake of argument the prosecutor committed misconduct, Gregory's claim fails because he cannot demonstrate prejudice under the state or federal standard.  (*People v. Wallace* (2008) 44 Cal.4th 1032, 1071 (*Wallace*) ["'conviction will not be reversed for prosecutorial misconduct' that violates state law . . . 'unless it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct' [citation]"]; *People v. Williams* (2013) 58 Cal.4th 197, 274 [no "relief for prosecutorial misconduct under federal law" unless the defendant shows "'the challenged conduct was not harmless beyond a reasonable doubt'"].)  Here, the prosecutor's brief comment did not undermine the outcome of the trial and was harmless beyond a reasonable doubt because the evidence against Gregory was strong and the evidence supporting his claimed defense was weak.  In addition, there is no indication in the record "'the jury understood or applied the complained-of comments in an improper or erroneous manner.' [Citations.]" (*People v. Brown* (2003) 31 Cal.4th 518, 553.)  Finally, the court instructed the jury it could not allow "bias, sympathy, prejudice, or public opinion" to influence its decision (see CALCRIM No. 101) and that the attorneys' closing arguments were not evidence (CALCRIM No. 222).  We presume jurors generally understand and follow the court's instructions.  (*People v. Myles* (2012) 53 Cal.4th 1181, 1212.)

B.      The Prosecutor's Comments Regarding the Viability of Gregory's Defense

Next, Gregory argues the prosecutor committed misconduct by shifting the burden of proof when she argued "'the Defendant is not entitled to use'" self-defense or defense of others because he "'does not have all of [the elements].'"  Gregory also contends the

6

prosecutor committed misconduct during rebuttal by stating, "[w]e don't have to show that each element of a valid self-defense claim is there in order for him to use it. If just one of them is gone, he can't use the claim of self-defense. . . ."

Before the parties' closing arguments, the court instructed the jury with the standard instructions on reasonable doubt and self-defense. During closing argument, the prosecutor discussed the elements of battery with infliction of serious bodily injury (§ 243, subdivision (d)) and noted one element was "the Defendant was not acting in self-defense or in the defense of another." Then she stated, "[t]he Defendant is only allowed to lawfully use self-defense or defense of others if, and this is in [CALCRIM No.] 3470[3] of your instructions: 'If he reasonably believed that either he or [his girlfriend] was in imminent,' focus on the word, imminent danger of suffering bodily injury or of being unlawfully touched; [¶] 'And that he reasonably believed that the immediate focus,' focus on immediate, use of force was necessary to defend against that danger; [¶] 'And three, that the Defendant used no more force than was reasonably necessary to defend against that danger.' [¶] If the Defendant does not have all of that, he is not entitled to lawfully use that defense."

The court overruled defense counsel's "burden shifting" and "Sixth Amendment due process" objections. The prosecutor then argued there was no basis to find Gregory acted in self-defense because surveillance video showed Gregory stabbed McKinley almost three minutes after McKinley sat down in the chair. The prosecutor also argued Gregory lacked a reasonable belief that the immediate use of force was necessary to defend against the danger and that even if there were a danger, Gregory used excessive force.

In summation, defense counsel repeatedly argued the People had the burden to prove Gregory did not act in self-defense. During rebuttal, the prosecutor stated, "if even

---

[3]    CALCRIM No. 3470, entitled "Right to Self-Defense or Defense of Another[,]" provides in relevant part: "The People have the burden of proving beyond a reasonable doubt that the defendant did not act in lawful (self-defense/ [or] defense of another). If the People have not met this burden, you must find the defendant not guilty of <insert crime(s) charged>."

one of those requirements of self-defense is missing, then the defense is not lawful and that it cannot be used by the Defendant. [¶] We don't have to show that each element of a valid self-defense claim is there in order for him to use it. If just one of them is gone, he can't use the claim of self-defense and, therefore, that third-of-the-last element of each of the charges for the People is satisfied." The court overruled defense counsel's "burden shifting" objection and advised the jury, "[t]he burden, the standards are as I've instructed. You'll be receiving the instructions and that's what you should rely on."

Taken in context, the prosecutor's statements cannot reasonably be understood as shifting the burden of proof to Gregory. The prosecutor did not suggest the defense had the burden of proof as to self-defense or defense of another — the prosecutor merely stated Gregory did not act in self-defense because he lacked a reasonable belief the immediate use of force was necessary and because Gregory used excessive force. (See *People v. Wilson* (2005) 36 Cal.4th 309, 360 [prosecutor's comments, taken in context, did not suggest the prosecution did not have the burden of proof].) At the end of her rebuttal, the prosecutor stated she had satisfied the elements of the crime of battery with infliction of serious bodily injury in violation of section 243, subdivision (d) because Gregory did not act in self-defense.

To the extent the prosecutor's comments were ambiguous and constituted misconduct (see, e.g., *Hill, supra,* 17 Cal.3d at p. 831) Gregory cannot demonstrate prejudice under either the federal or state standard. (*People v. Bordelon* (2008) 162 Cal.App.4th 1311, 1323-1324; *Williams*, *supra,* 58 Cal.4th at p. 274.) The court correctly instructed the jury on the crimes and applicable defenses, and defense counsel repeatedly reminded the jury the prosecution had the burden to prove Gregory did not act in self-defense. In addition, the court also admonished the jury about the parties' respective burdens and "it must be assumed the jury followed it's instruction . . . ." (*People v. Pride* (1992) 3 Cal.4th 195, 226.) Moreoever, the evidence against Gregory "was of an overwhelming nature" and the evidence supporting his self-defense claim was weak. (*People v. Galloway* (1979) 100 Cal.App.3d 551, 560.) It is not "'reasonably probable that a result more favorable to [Gregory] would have been reached without the

misconduct.' [Citation.]" (*Wallace*, *supra*, 44 Cal.4th at p. 1071.) Additionally, any prosecutorial error was harmless beyond a reasonable doubt. (*Williams, supra*, 58 Cal.4th at p. 274.)

C. The Prosecutor's Comments "Predicated on Her Own Knowledge"

Next, Gregory contends the prosecutor committed misconduct by making arguments "predicated on her own knowledge" and by misstating the law regarding intimate partner battering. We address only the claim regarding the prosecutor's statements "predicated on her own knowledge" because Gregory forfeited his claim that the prosecutor misstated the law by failing to object and request an admonition in the trial court. (*People v. Thomas* (2012) 54 Cal.4th 908, 943.) Gregory has not demonstrated trial counsel was ineffective for failing to object to the alleged misstatement of law and request an admonition.

During argument, the prosecutor stated: "The Defendant here is using [McKinley] just like he has always used [McKinley], for his own ends; for the room, for food, for money. . . [¶] And now he's using [McKinley] to try to . . . get out of responsibility for this case. So he's got to . . . make it seem like [McKinley] is [ ] the worst guy in the world." The prosecutor said there was no record of "a big problem" at the residential hotel where Gregory and McKinley lived. She explained, "We also have Officer Fung, who's a regular in the Tenderloin, been there seventeen years, goes . . . to the . . . Hotel all the time. Never seen [ ] McKinley before the 23rd of July. So this is not a big problem here with [McKinley] like you've been led to believe. [¶] Also, one other thing: [McKinley] still is at the . . . Hotel. And we know that the . . . Hotel is going to kick people out if they're a big, violent problem.[4] [¶] Why is it that [McKinley] didn't get kicked out after July the 23rd, after this big event where he's supposedly pushed the Defendant down the stairs? . . . [¶] My point is that on the 23rd of July, . . . we know that [McKinley] got arrested for warrants only, for nothing more. We know that in fact the

---

[4] According to one defense witness, a hotel tenant who has problems with management receives a written notification his or her tenancy is in jeopardy; after a sufficient number of notifications, the tenant is "kicked out[.]"

9

next day it was the Defendant that got 86'd from the . . . Hotel. [¶] Now, think to yourself why the Defendant would have gotten 86'd the day after he made these allegations against [McKinley] and [McKinley] was never kicked out?" At that point, defense counsel objected on the grounds of "speculation. Not based on evidence. Improper due process, sixth amendment." The court overruled the objections and instructed the jury, "the jury will decide what evidence to believe and to accept. You are the finders of fact."

Gregory contends the prosecutor committed misconduct by "purport[ing] to know the policies of the hotel and that it would have evicted McKinley if [Gregory's] allegations of violence were true." We are not persuaded. To the contrary, the prosecutor argued appropriate inferences from the evidence that the hotel evicted residents who violated hotel rules. "'[P]rosecutors have wide latitude to draw reasonable inferences from the evidence presented at trial. . . .' [Citation.]" (*People v. Tully* (2012) 54 Cal.4th 952, 1022.)

D. The Prosecutor's Purported Denigration of the Defense and Defense Expert

Gregory's final prosecutorial misconduct claim is the prosecutor denigrated the defense and the defense expert on intimate partner battering. During her summation, the prosecutor stated, "I asked [the defense expert] on the stand whether or not she felt that it was insulting, or inappropriate to victims, real victims of intimate partner battering, that this kind of defense is being employed in this kind of a case. And she didn't have a problem with it. She didn't have a problem with it, because she says this is something that should go in front of a jury. [¶] Well, ladies and gentlemen, this should be insulting to you, just like it should be insulting to the real victims of intimate partner battering, because this is not the kind of thing that should be employed in a case like this. [¶] This case is not about intimate partner battery, it's not about self-defense; it's about the savage attack and revenge by the Defendant on Mr. McKinley and he deserves to be convicted of these charges."

Later, the prosecutor attacked the defense expert's opinions, and then rhetorically asked, "So why do we have to listen to all of that[,]" — i.e., the expert's testimony — and responded, "[s]o she can earn her five grand." Defense counsel objected and the

10

court instructed the jury to "decide the facts as you find them." While the jury was deliberating, defense counsel claimed the prosecutor's "denigrating comments about defense counsel and about . . . the defense expert" violated Gregory's due process rights under the federal Constitution. The court disagreed, noting "[b]oth counsel were impassioned. Both counsel were advocating for their clients. But . . . contrary to the objections that were made, I do not believe that the People overstepped the line of advocacy. . . . And I believe that the People's closing arguments were within bounds and that's why I did not instruct with regard to them."

We are not persuaded by Gregory's argument that the prosecutor's comments attacked the integrity of defense counsel. The prosecutor did not cast aspersions on the defense. Her suggestion that the jury should be insulted by Gregory's claim of self-defense was "no more than sarcastic hyperbole identifying what the prosecutor believed to be weakness in the defense[.]" (*People v. Cummings* (1993) 4 Cal.4th 1233, 1303, fn. 48.) Moreover, her comments were not "likely to have been construed by the jury as an attack on defense counsel's personal integrity. The prosecution's remarks [were] likely interpreted as 'an admonition not to be misled by the defense interpretation of the evidence, rather than as a personal attack on defense counsel.' [Citation.]" (*People v. Spector* (2011) 194 Cal.App.4th 1335, 1406.) Finally, the prosecutor's remarks about the defense expert do not constitute misconduct. The prosecutor was "free to remind the jurors that a paid witness may accordingly be biased and is also allowed to argue, from the evidence, that a witness's testimony is unbelievable, unsound, or even a patent 'lie.'" (*People v. Arias* (1996) 13 Cal.4th 92, 162, quoting *People v. Sandoval* (1992) 4 Cal.4th 155, 180.)

## II.

### *Gregory's Confrontation Clause Claim Fails*

Gregory's next claim concerns McKinley's failure to testify at trial and the court's admission of his out-of-court statements to police. According to Gregory, the court's "failure to use all reasonable means at its disposal to secure McKinley's presence" at trial violated his "Sixth Amendment right to confront the witnesses against him."

11

A.     Defense Motion to Exclude Statements McKinley Made to Police Officers

Before trial, Gregory moved to exclude out-of-court statements McKinley made to police officers on hearsay grounds; Gregory also argued the use of such testimonial statements violated his federal constitutional right of confrontation.  At an in limine hearing, an investigator for the prosecutor testified he attempted to serve McKinley with a trial subpoena six times, and eventually served McKinley twice.  According to the investigator, McKinley was "quite upset" when he was served and, on one occasion, "ripped" the subpoena "in half" and tossed the pieces on the ground.

Defense counsel claimed the People had the power to seek a warrant to insure McKinley's presence at trial, and because they had not done so, the People had not exercised the diligence required before McKinley could be declared unavailable pursuant to Evidence Code section 240 and his hearsay testimony admitted.  The court rejected this argument and concluded the People could not enforce the subpoena by a body attachment or warrant because McKinley was the alleged victim of domestic violence and could not be confined for failing to testify.  (Code Civ. Proc., § 1219.)[5]  The court further determined "the People have exhausted every lawful means.  They have either personally served or delivered six subpoenas, two of which were personally served on Mr. McKinley.  And he has very clearly stated his refusal to come to court absent being dragged here, under force.  So I think he is unavailable."

B.     Any Assumed Confrontation Clause Violation Was Harmless Beyond a
        Reasonable Doubt

Gregory argues "the trial court was required to order the prosecution to escort McKinley, whose whereabouts were well known, to court."  In his opening brief,

---

[5]     Code of Civil Procedure section 1219, subdivision (a) provides, "when the contempt consists of the omission to perform an act which is yet in the power of the person to perform, he or she may be imprisoned until he or she has performed it, and in that case the act shall be specified in the warrant of commitment."  Subdivision (b) of that statute provides in relevant part, "no court may imprison or otherwise confine or place in custody the victim of a sexual assault or domestic violence crime for contempt when the contempt consists of refusing to testify concerning that sexual assault or domestic violence crime."

Gregory concedes the admission of McKinley's hearsay statements "did not result in significant prejudice" but claims the court violated his constitutional right of confrontation by denying him the ability to cross-examine McKinley.

The state and federal Constitutions guarantee a criminal defendant the right to confront adverse witnesses. (U.S. Const., 6th & 14th Amends; Cal. Const., art. I, § 15; *People v. Fuiava* (2012) 53 Cal.4th 622, 674.) "The right of confrontation 'seeks "to ensure that the defendant is able to conduct a 'personal examination and cross-examination of the witness, in which [the defendant] has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.'" [Citations.] To deny or significantly diminish this right deprives a defendant of the essential means of testing the credibility of the prosecution's witnesses, thus calling "into question the ultimate '"integrity of the fact-finding process."'" [Citations.]" (*People v. Herrera* (2010) 49 Cal.4th 613, 620-621.) The constitutional right of confrontation "is not absolute, however, and may 'in appropriate cases' bow to other legitimate interests in the criminal trial process." (*People v. Carter* (2005) 36 Cal.4th 1114, 1172.) As our high court has explained, "[t]o have a material witness who has committed no crime taken into custody, for the sole purpose of ensuring the witness's appearance at a trial, is a measure so drastic that it should be used sparingly. [Citation.]" (*People v. Cogswell* (2010) 48 Cal.4th 467, 477-478.)

Assuming McKinley's statements were testimonial and the court erred by admitting them at trial without allowing cross-examination, such error was harmless beyond a reasonable doubt. (*People v. Jennings* (2010) 50 Cal.4th 616, 652 (*Jennings*).) To determine whether a confrontation clause violation is harmless beyond a reasonable doubt, courts consider "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent

of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 684.)

Here, McKinley's statements to the police played a relatively minor role in the prosecution's case and, with the exception of his statement that Gregory usually carried a "'buck knife[,]'" were largely cumulative to other prosecution evidence. (*Jennings*, *supra*, 50 Cal.4th at p. 666 [claimed confrontation clause error harmless beyond a reasonable doubt where the challenged statement was cumulative to, and consistent with, the defendant's admissions]; *People v. Ledesma* (2006) 39 Cal.4th 641, 709, fn. omitted [assuming a confrontation clause violation and concluding "any error was nevertheless harmless beyond a reasonable doubt" because the challenged evidence "was cumulative of other evidence"].)

In addition, the prosecution presented overwhelming evidence proving Gregory committed the charged crimes: an eyewitness testified about the incident at trial, surveillance video captured the stabbing and refuted Gregory's claim of self-defense, and police officers found a knife on Gregory's person when they detained him. Moreover, Gregory admitted he stabbed McKinley, telling police officers it was "tit for tat."[6] Under the circumstances, any confrontation clause violation was harmless beyond a reasonable doubt. (*Schmaus, supra,* 109 Cal.App.4th at p. 860.)

III.
*The Probation Condition Regarding Gregory's Possession of Weapons*
*Must be Modified to Contain a Knowledge Requirement*

At the sentencing hearing, the court orally ordered: "You shall possess no weapons, and by weapons I'm including any knives of the sort that were used in this instance." The court's sentencing minute order, however, states, "Defendant not to

---

[6] We decline Gregory's suggestion to evaluate the assumed confrontation clause error in light of hypothetical beneficial testimony McKinley might have provided had he been compelled to appear at trial. As we have explained, the inquiry is not what helpful defense testimony McKinley could have provided, but whether the "'properly admitted evidence is overwhelming'" and whether the "'incriminating extrajudicial statement is merely cumulative of other direct evidence[.]'" (*People v. Schmaus* (2003) 109 Cal.App.4th 846, 860 (*Schmaus*).)

14

possess knives." Gregory claims there is a discrepancy between the trial court's oral pronouncement and the court's minute order, and the oral pronouncement controls. The People concede the error and we accept their concession. "When there is a discrepancy between the minute order and the oral pronouncement of judgment, the oral pronouncement controls." (*People v. Gabriel* (2010) 189 Cal.App.4th 1070, 1073; *People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2 (*Farell*).)

The orally imposed probation condition prohibiting Gregory from possessing weapons, including the type of knife used in the stabbing, remains constitutionally defective, however, because it does not contain a knowledge requirement. Gregory asks us to modify the condition to include "an express knowledge requirement." The People agree a "knowledge requirement should be added to the weapons possession condition of probation." The parties are correct. We modify the probation condition regarding Gregory's possession of weapons to impose a knowledge requirement. (See *People v. Freitas* (2009) 179 Cal.App.4th 747, 752 ["We agree with defendant that it is appropriate to modify the probation condition to specify that defendant not *knowingly* possess the prohibited items"]; *In re Victor L.* (2010) 182 Cal.App.4th 902, 912-913 [modifying condition of probation prohibiting minor's presence near weapons or ammunition to make knowledge requirement explicit].)

IV.
*Certain Fines and Fees Not Orally Ordered at the Sentencing Hearing*
*Must be Stricken from the Sentencing Minute Order*

At the sentencing hearing, the court orally imposed a $240 restitution fine (§ 1202.4, subd. (b)), a $40 court operations assessment (§ 1465.8, subd. (a)), and a $30 criminal convictions assessment (Gov. Code, § 70373). The court's sentencing minute order, however, includes the following fines and fees not orally imposed: (1) a $240 restitution fine "per convicted felony count" (1202.4, subd. (b)); (2) a $240 probation revocation restitution fine (§ 1202.44); (3) "probation costs up to an amount of $50 per month" (§ 1203.1b, subd. (a)); (4) a "pre-sentence investigation [fee] in the amount of

15

$150 as determined by the probation officer" (§ 1203.1b, subd. (a)); and (5) a booking fee of $135 (Gov. Code, § 29550.2).

Gregory contends the court should limit the section 1202.4, subdivision (b) restitution fine to $240 and the People agree. The parties are correct. The imposition of a $240 restitution fine "per convicted felony count" in the sentencing minute order conflicts with the court's oral pronouncement of a single restitution fine of $240. The court's oral pronouncement is controlling. (*People v. Mesa* (1975) 14 Cal.3d 466, 471.)

Gregory also urges us to strike certain fines and fees in the sentencing minute order because the oral pronouncement of sentence prevails over any contradictory written order. These fees are: (1) the probation revocation restitution fine (§ 1202.44); (2) monthly probation costs (§ 1203.1b, subd. (a)); (3) the presentence investigation fee (§ 1203.1b, subd. (a)); and (4) the booking fee (Gov. Code, § 29550.2). In their one paragraph response, the People state: "Appellant also notes that the court did not verbally order payment of a booking fee and the probation supervision and presentence investigation fees set forth in the minute order prepared by the clerk. He argues that the matter should be remanded for the court to determine the amounts of those fees. We agree that the matter should be remanded for this purpose. (See *People v. Zack[e]ry* (2007) 147 Cal.App.4th 380, 387-388 (*Zackery*).)"[7]

---

[7]     The People's terse response to Gregory's claims regarding the probation revocation restitution fine, probation costs, presentence investigation fee, and booking fee is misleading because it mischaracterizes Gregory's argument and then "agrees" with that mischaracterized argument. Gregory does not contend "the matter should be remanded for the court to determine the amounts of those fees." He argues these fees should be stricken. The People's response is also unhelpful because it does not discuss the fines and fees at issue or provide any reasoned argument regarding why the matter of these fees should be remanded rather than stricken from the court's sentencing minute order. While we can conceive of persuasive arguments why the issue of these fees should be remanded, we decline to make the People's arguments for them. "An appellate court is not required to examine undeveloped claims, nor to make arguments for parties." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106; *People v. Harper* (2000) 82 Cal.App.4th 1413, 1419, fn. 4.) The People's response also fails to mention relevant authorities such as *People v. Tillman* (2000) 22 Cal.4th 300 and *People v. McCullough* (2013) 56 Cal.4th 589.

16

We conclude the references to the probation revocation restitution fine, probation costs, presentence investigation fee, and booking fee in the sentencing minute order must be stricken. "In a criminal case, it is the oral pronouncement of sentence that constitutes the judgment." (*People v. Scott* (2012) 203 Cal.App.4th 1303, 1324.) "Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls. [Citations.]" (*Zackery supra,* 147 Cal.App.4th at p. 385; *Farell, supra,* 28 Cal.4th at p. 384, fn. 2.) "The clerk cannot supplement the judgment the court actually pronounced by adding a provision to the minute order . . . ." (*Zackery, supra,* 147 Cal.App.4th at p. 387.) Where — as here — fines and fees not imposed during the oral pronouncement of judgment are added to a minute order, they are contrary to the judgment and must be stricken. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185 [court has inherent authority to correct clerical errors in its records].)

## DISPOSITION

The trial court is directed to prepare an amended minute order of the December 21, 2012 sentencing hearing: (1) modifying the probation condition concerning Gregory's possession of weapons to read: "defendant must not knowingly possess weapons, including but not limited to the type of knife used in the incident[;]" (2) reducing Gregory's restitution fine to $240 (§ 1202.4, subd. (b)); (3) striking its order that Gregory pay a probation revocation restitution fine (§ 1202.44); (4) striking its order that Gregory pay monthly probation costs (§ 1203.1b, subd. (a)); (5) striking its order that Gregory pay a presentence investigation fee (§ 1203.1b, subd. (a)); and (6) striking its order that Gregory pay a booking fee (Gov. Code, § 29550.2).

The record does not contain an abstract of judgment. If one has been prepared that refers to any of these fines or fees, the trial court is directed to prepare an amended abstract of judgment deleting such references and to forward a certified copy to the Department of Corrections and Rehabilitation.

In all other respects, the judgment is affirmed.

17

                          _____

                          Jones, P.J.

We concur:

_____

Simons, J.

_____

Needham, J.